CFM

COMMONWEALTH *vs.* CERTAIN INTOXICATING LIQUORS,
George B. Lyman, claimant.

Intoxicating liquors kept for sale in this Commonwealth in violation of law may be seized and forfeited as a nuisance, under the St. of 1869, *c.* 415, although they are so kept by a bailee in fraud of their owner, and he is innocent of the illegal purpose of the keeper.

COMPLAINT on the St. of 1869, *c.* 415, § 44, to a trial justice for a warrant to search for certain intoxicating liquors alleged to be kept by John Parks and Joseph Lafleur in Huntington on July 25, 1870, for unlawful sale in this Commonwealth. Six barrels and one cask of intoxicating liquors were seized on the warrant. As the trial justice was of opinion that their value exceeded twenty dollars, notice was issued to Parks and Lafleur, and all other persons claiming any interest in the liquors, to appear in the superior court; and George B. Lyman appeared accordingly as claimant of five barrels of the liquors, and no claimant appeared of the residue.

At the trial in the superior court, before *Pitman*, J., judgment was ordered for a forfeiture of all the liquors, and the claimant alleged exceptions, which referred to the preliminary proceedings and continued as follows:

" Lyman testified that he resided in Ohio, and was a manufacturer and dealer in liquors ; that early in June 1870 at Huntington, where he formerly resided, he asked Parks, who resided there, if he wished to buy any liquors, and Parks declined, saying that he should buy none unless a license law should be passed, but that the prospect was that the legislature would pass a license law, and in that case he might want some ; that the witness then asked Parks if he could store five barrels of liquors for the witness, subject to his order, and ship the same as he might order, and Parks agreed to do so ; that the witness engaged the freight agent of the railroad company to notify Parks when the liquors should arrive, and subsequently, on June 21, the witness shipped the five barrels from Ohio, consigned to himself at Huntington ; that he had no intention of selling any of the liquors in this Commonwealth contrary to law, nor unless a license law should be enacted ; that in July, hearing that the legislature had adjourned without passing a license law, he sold all the liquors to a person in Connecticut, and when he ordered them to be shipped to Connecticut he learned that they had been seized under the warrant in this case ; that he did not know Lafleur, and had nothing to do with him in the matter ; that Parks was only to store the liquors, and had no authority to sell or appropriate any part of them ; and that there was no arrangement by which Parks might take or sell any of them in any contingency.

" Parks testified that, when he was informed that the liquors had arrived at Huntington, he spoke to Job Little, who was occupying the store-room, where the liquors were seized, under a lease from Parks, who owned the building, about storing them for Lyman, and Little agreed to store them and did so ; that the witness had no occupancy of the room, and nothing more to do with storing the liquors than thus engaging Little ; that neither he nor Lafleur had any authority from Lyman to sell or appropriate any of the liquors ; and that he had not sold or taken any of them.

Commonwealth *v.* Intoxicating Liquors.

" The Commonwealth relied on evidence tending to show that the liquors were kept in same room with other liquors of Parks & Lafleur, and all were intended for sale by Parks & Lafleur in another place than the store-room, to wit, their hotel nearly opposite, and were removed from the store-room to the place of sale in small quantities, as wanted for sale.

" The claimant contended that, if the liquors were sold, or kept for sale, by Parks & Lafleur, they were guilty of an unlawful conversion of them ; and asked the judge to rule that if the liquors were the property of the claimant, and were stolen from him by Parks & Lafleur, the verdict should be for the claimant ; but the judge declined so to rule, and ruled and instructed the jury as follows : If the jury are satisfied that Parks & Lafleur were carrying on this hotel, and that Lyman left these liquors for storage with Parks as stated by Lyman, and Parks & Lafleur at the time of making this complaint kept these liquors for the purpose of being sold at their hotel in violation of law, the same would be liable to forfeiture, and the jury would be authorized to find the issue submitted to them in favor of the Commonwealth, although the jury should believe that Lyman remained the owner of the liquors, and they were sold or kept for sale without his authority or knowledge.

" The jury rendered the following verdict signed by their foreman : ' The jury find that all of the liquors described in the return on the warrant in this case, and seized by the officer under the proceedings in this case, were kept, at the time of making the complaint, by the persons alleged therein, as alleged in said complaint, for the purpose of being sold in violation of law of this Commonwealth ; ' and the claimant alleged exceptions to the foregoing rulings and instructions."

*W. Allen & D. W. Bond,* for the claimant. 1. The instructions were erroneous, in that they permitted the jury to return a verdict of forfeiture if the liquors were kept for sale by a person who acquired and held possession of them against, and not under, the right of the owner. *Fisher* v. *McGirr,* 1 Gray, 1, 26, 27, 35, 37. *Trueman* v. *Casks of Gunpowder,* Thacher Crim. Cas. 14. *Peisch* v. *Ware,* 4 Cranch, 347. *United States* v. *Guillem,*

11 How. 47. *Ham* v. *McClaws*, 1 Bay, 93. The instructions assumed that Parks & Lafleur were bailees of the property at the time when it was unlawfully converted; or that it was immaterial whether they were or not. Whether Parks was ever bailee; whether he continued to be such at the time of the conversion; whether, if so, the conversion was effected by Lafleur alone, and Parks was to be held as a subsequent co-keeper with him only from the partnership relation; were all questions on which there was evidence for the jury.

2. If Parks, having lawful possession of the property, embezzled it, and with Lafleur kept it for sale, that would not work a forfeiture. The criminal intent which is the ground of the forfeiture must be that of the owner, or of some person in possession under him who in that respect acts under his authority, express or implied. The embezzlement terminates the bailment; and the possession afterwards is held as much against the owner, as if the original taking had been tortious. This is not a case where the forfeiture arises from the act or condition of the property, but from the intent of the keeper; the object is punishment as well as prevention. *Fisher* v. *McGirr*, 1 Gray, 1, 26, 35. 1 Bishop Crim. Law (4th ed.), §§ 696–698, 703, and cases there cited. Marshall, C. J., in *United States* v. *Schooner Little Charles*, 1 Brock. 347, 354. If A. hires B. to store his property, he is no more guilty, or less unfortunate, if B. embezzles it, than if C. steals it.

*C. Allen*, Attorney General, for the Commonwealth.

CHAPMAN, C. J. The seizure of liquors under the St. of 1869, *c.* 415, because they are kept for sale illegally, is a proceeding *in rem*, which regards such liquors as a nuisance. The statute permits the keeper or any other person to come and claim them as his property; and if they appear to be his, they are delivered to him, unless they are so kept as to constitute what the statute regards as a nuisance. By § 51, if it appears that the liquor, or any part thereof, was, at the time of making the complaint, owned or kept by the person alleged therein, for the purpose of being sold in violation of this act, the court or justice shall render judgment that such or so much of the liquor so seized as was so

unlawfully kept, and the vessels in which it was contained, shall be forfeited to the Commonwealth. If the claimant was not the keeper, his intent is not made material. The liquors are forfeited on account of the intent with which they were kept. The object of the legislature was to adapt the process to the nature of the evil to be prevented. *Fisher* v. *McGirr*, 1 Gray, 1, 27.

Legislation of this character is not novel. *United States* v. *Brig Malek Adhel*, 2 How. 210, 233, is a strong case, and states the principle on which such legislation rests. A brig was seized under the act against piracy, and was condemned to be forfeited, though the owner, who was the claimant, was innocent of any offence. The court said that the innocence of the owner could not withdraw the vessel from the penalty of confiscation; that the vessel was treated as the offender, — as the guilty instrument or thing to which the forfeiture attached; that this is done from the necessity of the case, and the same doctrine is familiarly applied to cases of smuggling and other misconduct under our revenue laws, and cases arising under non-intercourse laws or an embargo. Authorities are cited by the court, showing that the English law is the same. The ship is held liable for the torts and misconduct of the master and crew, of which the owner is ignorant.

This principle of legislation has been acted upon in this Commonwealth in other cases, not relating to the traffic in liquor. By Gen. Sts. *c.* 26, a great variety of nuisances may be removed, or ordered to be removed by the proper officers; and by § 12, they may be destroyed. Or if the claimant had owned a valuable dog, and sent him here to be kept according to law, and his agent had kept him illegally, or if a trespasser had done so, it would have been the duty of the officers of the law to kill him.

There is nothing in the reported facts to exempt this liquor from forfeiture. It was no less a nuisance, and subject to be seized and forfeited, than if the claimant's agent had acted by authority from him; and no issue is to be framed under the statute, to try the question whether the claimant authorized the sales. The instructions given to the jury were correct. The jury must

have found, under the instructions, that the liquors came into the hands of Parks by his consent. There was nothing to show that they were stolen.                                        *Exceptions overruled.*