# DECISIONS

## OF THE

# Supreme Court of Florida

## JANUARY TERM, A. D. 1920.

---

IN RE SEIZURE OF 7 BARRELS OF WINE.

Opinion Filed January 14, 1920.

1. Where a commodity constituting property, not inherently dangerous to persons or to their fundamental rights, or injurious to the public welfare because of its mere possession, is lawfully possessed before and at the time of the adoption or enactment of laws forbidding its possession, and such continued possession is not for an unlawful purpose or use and is not an incipient nuisance, and does not jeopardize the rights of others or the public welfare, and when a reasonable opportunity to lawfully dispose of the commodity before its seizure is not afforded, the enforcement of such laws, as against such previously acquired lawful possession, may deprive persons of property without due process of law in violation of the Fourteenth Amendment to the Federal Constitution. Such enforcement may also violate property rights secured by the State Constitution.

2. While the amendment to Article 19 of the State Constitution may, to conserve the general welfare, in effect qualify rights lawfully existing before the adoption of the amendment, it does not purport to *wholly destroy* property rights in liquors and wines or other commodities that were lawfully acquired and possessed as property before the change in the organic law. The organic amendment and the statute enacted to enforce it, expressly provide for stated limited property rights in wines that may be lawfully acquired and held in possession.

3. The provisions of the Federal and State Constitutions securing defined property rights against invasion by State authority, are limitations upon the law-making power of the Legislature as well as upon the powers of the other departments of the State government; and property not harmful in itself that is legally acquired as such by persons for lawful purposes, and not used, or designed to be used, for or in connection with, or in furtherance of, an unlawful act or purpose, cannot legally be destroyed by the authority of a statute that is enacted subsequent to the lawful acquisition of the property, when such destruction is not expedient to conserve the rights of others or of the public welfare. The police power of the State is not absolute. It is subject to controlling provisions of the Federal and State Constitutions.

4. A statute being reasonably susceptible of two interpretations, by one of which it would be clearly constitutional, and by the other of which its constitutionality would be doubtful, the former construction should be adopted.

5. In determining the legality and effect of a statutory regulation, the court should ascertain the legislative intent; and if the ascertained intent will permit, the enactment should be construed and effectuated so as to make it conform to, rather than violate, applicable provisions and principles of the State and Federal Constitutions, since it must be assumed that the Legislature intended the enactment to comport with the fundamental law.

6. A statute must be so construed, if fairly possible, as to avoid, not only the conclusion that it is unconstitutional, but also grave doubts upon that score.

7. A statute is not to be given a retrospective effect unless its terms show clearly that such an effect was intended.

8. The rule that statutes are not to be construed retrospectively unless such construction was plainly intended by the Legislature applies with peculiar force to those statutes the retrospective operation of which would impair or destroy vested rights.

9.  A statutory regulation may, consistently with organic law, be applied to one class of cases in controversy, and may violate the constitution as applied to another class of cases. This does not destroy the statute; but imposes the duty to enforce the regulation when it may be legally applied.

10. A statute should not, by construction, be given a retrospective effect when it would jeopardize the validity of the statute, or when it would make its application conflict with organic law.

11. A statute should not be so construed or applied as to make it conflict with organic law, when a construction or application conformable to the constitution is practicable and the legislative intent is not thereby thwarted, since it must be assumed that the Legislature contemplated the enactment of a law that would conform to the constitution and that it would be applied to classes of cases in which it may be validly enforced.

12. Statutory regulations may not wholly destroy the right to acquire, possess and protect any species of property that had already been lawfully acquired and possessed for legal purposes, before the enactment of the statute, and a reasonable opportunity to lawfully dispose of it is not afforded, before its seizure, unless, because of its nature, the property jeopardizes the public health, safety, morals, or general welfare, or unless the property is knowingly used in violation of law to the detriment of the public.

13. Property is acquired and held subject to then existing laws, and also subject to future enactments that reasonably *regulate* its use in the interest of the public welfare.

14. Property already lawfully acquired for legal purposes, is not subject to be wholly destroyed by virtue of the police power, under statutes enacted after the lawful acquisition of the property, unless the property is of such a nature that it has become, or been adjudged to be, or declared by a valid law to be, a nuisance, or unless it otherwise endangers the public safety, health or welfare, or unless it is designedly used for,

or in connection with, or in furtherance of, an illegal act or purpose that injuriously affects public rights or the general welfare.

15. A valid exercise of the police power of the State cannot be stayed by the acquisition of property after the enactment of a statute declaring such property to be noxious and making the possession of it unlawful, even though the property is acquired before the enactment takes effect or becomes operative, it being within the power of the Legislature to enact such a law to become effective or operative at a future day. In such a case the noxious property is acquired with full notice of its infirmity and that after a day certain its possession will by mere lapse of time be unlawful.

16. A nuisance may be abated, but unoffensive private property may not be arbitrarily destroyed.

17. The provisions of Chapter 7736 Laws of Florida, approved December 7, 1918, authorizing the seizure and destruction of intoxicating liquors and beverages, that are held in possession in violation of the statute, do not apply to wine legally acquired before the enactment of the statute, and held under the circumstances stated in the opinion, where the wine is not legally declared to be and is not in fact shown to be, an incipient nuisance, and it does not otherwise imperil the common good, and it is not used or designed to be used for, or in connection with, or in furtherance of, an unlawful act or purpose, and its mere possession does not impair public rights or jeopardize the public welfare.

An Appeal from the Circuit Court for Escambia County; A. G. Campbell, Judge.

Order reversed.

*Philip D. Beall* and *John S. Beard,* for Claimant;

*Van C. Swearingen,* Attorney General, and *D. Stuart Gillis, Assistant,* contra.

## STATEMENT.

Among the provisions of Chapter 7736, Laws of Florida, approved December 7, 1918, are the following:

"Sec. 3.   That it shall be unlawful for any person, association of persons, or corporations, or any agent or employee of any person, association of persons, or corporation, to have in his, her, their, or its, possession, custody or control, in this State, any alcoholic or intoxicating liquors or beverages, except as is hereinafter provided.

"Sec. 5.   *   *   *   Nothing contained in this Act shall be construed to make it unlawful for any person over the age of twenty-one years to possess, have in custody or control, in such person's bona fide residence, for the personal use of himself, or herself, and family, and not to be disposed of to any other person in any way, not exceeding four quarts of distilled alcoholic or intoxicating liquors or beverages and twenty quarts of malt or fermented alcoholic or intoxicating liquors or beverages, either or both, but this shall not be construed to permit any such person to possess, have in custody or control, more than the maximum quantity of the particular class of liquors herein mentioned.   *   *   *

"Sec. 15.   That the right of property in and to all alcoholic or intoxicating liquors or beverages, whether spirituous, vinous or malt, manufactured, sold, bartered, or exchanged, transported or possessed by any person, association of persons, or corporation, in violation of any of the provisions of this Act, and all extract, essence or tincture of Jamaica ginger sold, dispensed or given away, in violation of any of the provisions of this Act, and all other personal property that may have been used by any person, association of persons, or corporation in the vio-

lation of any of the provisions of this Act or which may have been used to facilitate the violation of any of the provisions of this Act, and all of the things mentioned in Section Four of this Act, including automobiles, motor trucks, wagons, buggies, boats, vessels and other water craft, and all machines traveling through the air, and all other means of conveyance, used in the violation of any of the provisions of this Act, or to facilitate the violation of any of the provisions of this Act, is hereby declared not to exist in any person, association of persons, or corporation, and the same shall be forfeited. That it shall be the duty of the several Sheriffs, Deputy Sheriffs, Constable and police officers of municipalities, to seize any and all such things, and the same shall be safely kept by the Sheriff of the County until disposed of as is in this Section provided. That it shall be the duty of the Sheriff of the County, within ten days after the receipt of any such things, to make and subscribe to an affidavit in writing before some officer authorized by law to administer an oath, reciting such seizure, with the date, place and things seized, giving a reasonably full description thereof, and the name of the alleged owner and person from whose possession same were taken, if either or both be known to such Sheriff, and within ten days after the receipt of such things by the Sheriff, such Sheriff shall present such affidavit to the Judge of the Circuit Court of the County where such things were seized, and such Circuit Judge shall direct that such Sheriff shall serve written notice upon such owner and person from whose possession such things were taken, if known, and if he or they be within the County, of the time and place of the hearing upon such affidavit, which may be in term time or in vacation, and at any place within the Judicial Circuit as the Circuit Judge may fix, which notice shall

be signed by the Circuit Judge citing such person or persons to appear and show cause, if any, why such things should not be adjudged forfeited and disposed of as in this Section provided. But if such Sheriff shall recite in his affidavit that such things were not taken from the possession of any person, association of persons, or corporation, or that the owner is unknown, or that either of such persons are without the County, conceals himself or themselves, or that personal service of such notice cannot be made by such Sheriff for any good reason, the Circuit Judge shall by written order direct that, in lieu of personal notice of such hearing to any such person, that written notice of such hearing shall be posted at the County Court House door, directed to all persons interested in such things, and giving notice of such seizure, and of the date and place thereof and a reasonable description of the things seized, and of the time and place of the hearing upon such affidavit, which notice shall be signed by the Circuit Judge. And if at the time and place provided for the hearing upon such affidavit no person shall appear and claim such things, the affidavit of the Sheriff shall stand as confessed and taken as true, and the recitals therein contained shall not thereafter be open to question in any other Court or proceeding, and the Circuit Judge shall thereupon make an order in writing directing the destruction of such things, or the sale thereof, by the Sheriff in the same manner and upon the same terms and conditions as is provided in Section Fourteen hereof. But if any person shall appear at such hearing and claim the things and interpose any defense to such affidavit, the Circuit Judge shall determine whether the evidence adduced proves beyond a reasonable doubt that such things are forfeited, and make his written order accordingly. And if he shall determine in the affirmative

such things shall be destroyed or sold by the Sheriff in the same manner and upon the same terms and conditions as is provided in Section Fourteen hereof, but if he shall determine in the negative respecting all or any of such things, the part not forfeited shall be returned to the person legally entitled thereto. And if the State, or the Sheriff, or the Claimant shall be dissatisfied with the decision of said Circuit Judge they shall have the right within ten days of the making of the order to appeal from the final decision of the Court to the Supreme Court in the same manner as appeals in Chancery are taken under general law and the rules of the Supreme Court, and upon such appeal being entered such Circuit Judge shall cause to be reduced to writing and authenticate with his signature all oral evidence considered by him upon such hearing, and the same shall be filed with the papers in the case and thereby become a part of the record proper, and a bill of exceptions shall not be necessary. The hearing before the Circuit Judge shall be informal and he shall have the power and authority to make all needful rules and orders to carry this Section into effect. And the Sheriff shall have the right to call to his assistance the State Attorney, County Solicitor or other commissioned prosecuting attorney, or other prosecuting attorney regularly employed by the County, to assist him in preparing the affidavit herein mentioned, and represent him at the hearing before the Circuit Judge, and in taking and perfecting any appeal from the final decision of the Circuit Judge. But no appeal taken by any party shall operate as a supersedeas, but such things shall remain in the custody of the Sheriff pending such appeal and to abide the final decision of the Supreme Court."
*   *   *

"Sec. 22.   That, if for any reason, any Section or provision of this Act shall be adjudged unconstitutional, or otherwise inoperative, such fact shall not be held to affect any other Section or provision in this Act contained, but the same shall remain in full force and effect as if the Section or provision adjudged unconstitutional or inoperative had not originally been incorporated in this Act.

"Sec. 24.   That this Act shall go into effect the first day of January, A. D. 1919.

"Approved December 7, 1918."

WHITFIELD, J.—(*After stating the facts*) This statutory proceeding was begun by the seizure on January 28, 1919, of seven barrels of wine (said barrels containing about 300 gallons) which were in the possession of Antonie Marasse *et al.*, followed by proceedings under Chapter 7736, Laws of Florida, approved December 7, 1918, by which the greater portion of the seven barrels of wine were ordered destroyed upon the theory that *the possession* of the wine in excess of certain small quantities is unlawful under Chapter 7736. Marasso v. Van Pelt, Sheriff, 77 Fla. 432, 81 South. Rep. 529. No question of unlawful sales of liquor is involved.

On an appeal provided for by the statute, it is contended that the action taken is a violation of property rights secured by the State and Federal Constitutions.

An amendment to Article XIX of the State Constitution, adopted at the General Election November 5, 1918, to "go into effect on the first day of January, A. D. 1919," provides that "the manufacture, sale, barter or exchange of all alcoholic or intoxicating liquors and beverages, whether spirituous, vinous or malt, are hereby forever prohibited in the State of Florida, except alcohol for

medical, scientific or mechanical purposes, and wine for sacramental purposes, the sale of which alcohol and wine for the purposes aforesaid, shall be regulated by law. The Legislature shall enact suitable laws for the enforcement of the provisions of this article."

On December 7, 1918, at a special session of the Legislature convened by proclamation of the Governor there was approved by the Governor, a statute, Chapter 7736, Laws of Florida, "An Act to make effective the Nineteenth Article of the Constitution of this State, as amended at the General Election held November 5th, nineteen hundred and eighteen," etc., which statute contains the provisions under which this proceeding is had. The last section of the statute enacts "that this Act shall go into effect the first day of January, A. D. 1919." See extracts from the statute in the statement.

In Marasso v. Van Pelt, 77 Fla. 432, 81 South. Rep. 529, the validity of the statute as applied to the facts then in issue, was sustained, but it was therein expressly stated that "the information does not allege that the liquors were in the possession of the defendants prior to the adoption of Amended Article 19, or the enactment of Chapter 7736, Acts of 1918, special session, or prior to January 1, 1919, when Article 19 of the Constitution and the statute became effective. Whether that would present a material question is not considered here," citing Barbour v. State, 249 U. S.

An agreed statement of facts on which the Circuit Court acted in ordering the destruction of the greater part of the seven barrels of wine, is as follows:

"IN THE CIRCUIT COURT OF ESCAMBIA COUN-
TY, STATE OF FLORIDA, FIRST JUDICIAL CIR-
CUIT.
IN RE
SEVEN BARRELS OF WINE.

### "AGREED SATEMENT OF FACTS:

"It is agreed by the counsel for the claimants in the
above styled cause and the State Attorney for the First
Judicial Circuit of the State of Florida, as follows:

"(1). That the seven barrels of wine in question was
found by the Sheriff in a building occupied by the claim-
ants as a store building and a dwelling house, the up-
stairs being used as a dwelling house and the lower floor
as a grocery, etc., store; that the wine was found by the
Sheriff in that portion of the building used as a store;
that said building is located in Pensacola, Escambia
County, State of Florida. That J. C. Van Pelt, Sheriff
of Escambia County, took into his possession the said
seven barrels of wine on the ............... day of ...................................,
A. D. 1919.

"(2). That the said seven barrels of wine in question
came into the possession of the claimants under the fol-
lowing circumstances: That the Master of the Italian
steamer Luchiano Manara, Phillipe Caffiero, (that said
steamer was engaged in foreign commerce between ports
of the United States and the Kingdom of Italy at all
times in question in this suit) directed one of the claim-
ants to purchase twenty-seven (27) barrels of wine for
the account of the said Master of said vessel. The laws
of the country requiring the furnishing to the members
of the crew of said ship certain quantities of wine per
man per day. That said vessel was at that time under

the control of the Italian Government; that said wine was to be used for ship stores in said ship and no other, and though opportunity offered, no attempt was made to deliver any of said wine to a boat other than, or party other than, the Luchiano Manara, or its Master. That pursuant to the instructions of the Master and acting for him and under his directions, claimant purchased twenty-seven (27) barrels of wine at New Orleans, Louisiana, and paid for same out of the moneys belonging to claimant. The said wine was shipped to Pensacola, Florida, and reached Pensacola about the middle of October, 1918; that the said Steamer on its first trip after the arrival of said wine took on board only twenty (20) of said barrels of wine on said trip. That the claimant, directed, paid for the seven (7) remaining barrels of wine, (the purchase price being 95c per gallon for all of said twenty-seven (27) barrels, and that the claimants never charged, or received, or intended to receive any profit upon same or any of it.

"That the claimants were engaged as ship chandlers, and it is customary for ship chandlers in order to secure the business of a ship for the sales of those wares which are carried in stock by them, to act under the instructions and directions of the Master of the vessel, to purchase as his representative and hold for him any article he may direct which they do not carry in trade, same being held by them as the ship's property until called for and taken by the ship.

"(3). That before the ship returned to get the remaining seven (7) barrels of wine now in question, the prohibition law went into effect, and claimants were unable to deliver same because thereof, and therefore the Mas-

ter has not refunded or paid for said seven barrels of wine yet.

"This the 20th day of June, A. D. 1919.

R. A. McGEACHY,
  State Attorney.

PHILIP D. BEALL and JOHN S. BEARD,
            Counsel for Claimant."

Prior to the adoption of the Amendment of Article 19 of the Constitution, November 5, 1918, and prior to the enactment of Chapter 7736, approved December 7, 1918, alcoholic or intoxicating liquors and beverages were property that could be lawfully acquired, possessed and protected in this State. See Ex parte Francis, 76 Fla. 304, 79 South. Rep. 753.

Under the agreed statement of facts it is assumed here that the seven barrels of wine are alcoholic or intoxicating liquors or beverages and as such came into the possession of the claimants "about the middle of October, 1918," which was prior to the adoption of the amendment to Article 19 of the State Constitution and prior to the enactment of Chapter 7736 for the enforcement of the prohibitions of the organic amendment, and that the possession of the wine was not for unlawful purposes. This presents the question whether Chapter 7736, Laws of Florida, approved December 7, 1918, is applicable to alcoholic or intoxicating liquors and beverages, whether spirituous, vinous or malt, where such liquors or beverages were lawfully acquired and possessed in this State prior to the adoption of the amendment to the State Constitution and prior to the enactment of the statute, under which statute the *possession* of such liquors and bevarages in excess of stated small quantities is unlaw-

ful, and where such previously acquired possession continued after the change in the laws making possession unlawful, it being in effect conceded that the continued possession was not for unlawful purposes, and that claimants had no opportunity to lawfully dispossess themselves of the wine after the statute was enacted before the seizure occurred. The burden is upon the claimants to show that the statute "conflicts with some constitutional restraint or does not subserve the public welfare." Erie R. Co. v. Commissioner of Labor of State of New York, 233 U. S. 685, 34 Sup. Ct. Rep. 761. See also Schmitt v. Cook Brewing Co.,      Ind.    , 120 N. E. Rep. 19, 3 A. L. R. 270; Park v. State,      Nev.    , 178 Pac. Rep. 389, 3 A. L. R. 75.

Liquor laws are enacted by virtue of the police power to protect the health, morals and welfare of the public; and, while such laws may operate to *depreciate* the value of property used in the manufacture of liquor, such depreciation is not the taking of property without due process of law as prohibited by the Fourteenth Amendment. Eberle v. People of State of Michigan, 232 U. S. 700, 706, 34 Sup. Ct. Rep. 464; Mugler v. State of Kansas, 123 U. S. 623, 8 Sup. Ct. Rep. 273; Beer Co. v. Massachusetts, 97 U. S. 25.

But where a commodity constituting property, not inherently dangerous to persons or to their fundamental rights, or injurious to the public welfare because of its mere possession, is lawfully possessed before and at the time of the adoption or enactment of laws forbidding its possession, and such continued possession is not for an unlawful purpose or use and is not an incipient nuisance, and does not jeopardize the rights of others or the public welfare, and when a reasonable opportunity to lawfully dispose of the commodity before its seizure is

not afforded, the enforcement of such laws, as against such previously acquired lawful possession, may deprive persons of property without due process of law in violation of the Fourteenth Amendment to the Federal Constitution. See Bartemayer v. Iowa, 18 Wall (U. S.) 129; Eberle v. People of State of Michigan, *supra.* See also Cummings v. Missouri, 4 Wall. (U. S.) 277, text 321; Ex parte Garland, 4 Wall. (U. S.) 333; Johnannessen v. United States, 225 U. S. 227, text 242, 32 Sup. Ct. Rep. 613; Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. Rep. 18. Such enforcement may also violate property rights secured by the State Constitution. See Wynehamer v. People, 13 N. Y. (3 Kernan) 378; State v. McGuire, 24 Ore. 366, 33 Pac. Rep. 666, 21 L. R. A. 478; People v. O'Neil, 71 Mich. 325, 39 N. W. Rep. 1; Allen v. Young, 76 Me. 80; Hull v. State, 29 Fla. 79, 11 South. Rep. 97, 30 Am. St. Rep. 95, 16 L. R. A. 308; Park v. State, *supra*, 3 A. L. R. 75; State ex rel. v. Bradshaw, 39 Fla. 137. While the amendment to Article 19 of the State Constitution may, to conserve the general welfare, in effect qualify rights lawfully existing before the adoption of the amendment, it does not purport to *wholly destroy* property rights in liquors and wines or other commodities that were lawfully acquired and possessed as property before the change in the organic law. The organic amendment and the statute enacted to enforce it expressly provide for stated limited property rights in wines that may be lawfully acquired and held in possession.

The provisions of the Federal and State Constitutions securing defined property rights against invasion by State authority are limitations upon the lawmaking power of the Legislature as well as upon the powers of the other departments of the State government; and property not

harmful in itself that is legally acquired as such by persons for lawful purposes, and not used, or designed to be used, for, or in connection with, or in furtherance of, an unlawful act or purpose, cannot legally be destroyed by the authority of a statute that is enacted subsequent to the lawful acquisition of the property, when such destruction is not expedient to conserve the rights of others or of the public welfare. The police power of the State is not absolute. It is subject to controlling provisions of the Federal Constitution. See Atchison, T. & S. F. R. Co. v. Vosburg, 238 U. S. 56, 35 Sup. Ct. Rep. 675; Erie R. Co. v. Commissioner of Labor of State of New York, *supra;* 12 C. J. 928 *et seq.;* Park v. State, *supra.*

A statute being reasonably susceptible of two interpretations, by one of which it would be clearly constitutional, and by the other of which its constitutionality would be doubtful, the former construction should be adopted. Carey v. State of South Dakota, U. S., 39 Sup. Ct. Rep. 403; Harriman v. Interstate Commerce Commission, 211 U. S. 407, text 422, 29 Sup. Ct. Rep. 115; Knights Templars' and Masons' Life Indemnity Co. v. Jarman, 187 U. S. 197, 23 Sup. Ct. Rep. 108; 6 R. C. L. 78; United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. Rep. 658, Ann. Cas. 1917D, 854; Attorney General of the United Statee v. Central R. Co. of New Jersey, 213 U. S. 366 ,29 Sup. Ct. Rep. 451; The Abby Dodge v. United States, 223 U. S. 166, 32 Sup. Ct. Rep. 310; 25 R. C. L. 1001; City of Jacksonville v. Bowden, 67 Fla. 181, 64 South. Rep. 769.

In determining the legality and effect of a statutory regulation, the court should ascertain the legislative intent; and if the ascertained intent will permit, the enactment should be construed and effectuated so as to make it conform to, rather than violate, applicable provisions

and principles of the State and Federal Constitutions, since it must be assumed that the Legislature intended the enactment to comport with the fundamental law. A statute must be so construed, if fairly possible, as to avoid, not only the conclusion that it is unconstitutional, but also grave doubts upon that score. United States v. Jin Fuey Moy, *supra;* Burr v. Florida East Coast Ry. Co., 77 Fla. 259, 81 South Rep. 464; Langford v. Odom, 77 Fla. 282, 81 South. Rep. 469; United States v. Standard Brewery,    U. S.    , Sup. Ct. Rep.    , decided January 5, 1920.

A statute is not to be given a retrospective effect unless its terms show clearly that such an effect was intended. McCarthy v. Havis, 23 Fla. 508, 2 South. Rep. 819; 36 Cyc. 1205; 12 C. J. 1091; 2 Lewis' Sutherland Stat. Const. (2nd ed.) 580; Vinson v. Palmer, 45 Fla. 630, 34 South. Rep. 276.

The rule that statutes are not to be constructed retrospectively unless such construction was plainly intended by the Legislature applies with peculiar force to those statutes the retrospective operation of which would impair or destroy vested rights. 36 Cyc. 1210; Graves v. Dunlap, 87 Wash. 648, 152 Pac. Rep. 532; 2 Lewis' Sutherland Stat. Const. (2nd ed.) Sec. 642; Matthews v. Jeacle, 61 Fla. 686, 55 South. Rep. 865; 25 R. C. L. 787, 792, McGehee Due Process of Law 154.

A statutory regulation may, consistently with organic law, be applied to one class of cases in controversy, and may violate the Constitution as applied to another class of cases. This does not destroy the statute; but imposes the duty to enforce the regulation when it may be legally applied. See Kansas City Southern R. Co. v. Anderson, 233 U. S. 325, 34 Sup. Ct. Rep. 599; Seaboard Air Line Ry. v. Robinson, 68 Fla. 407, 67 South. Rep. 139; El Paso

& Ner. Co. v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. Rep. 21; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282; Osborne v. State, 33 Fla. 162, 14 South. Rep. 588; Osborne v. State of Florida, 164 U. S. 650, 17 Sup.. Ct. Rep. 314; Cason v. Quinby, 60 Fla. 35, 53 South. Rep. 741; State v.. Smiley, 65 Kan. 240, 69 Pac. Rep. 199; 6 R. C. L. p. 130; People v. O'Neil, 109 N. Y. 251, 16 N. E. Rep. 68; Cooley's Const. Lim. (7th ed.) 97, 255; United States Lumber & Cotton Co. v. Cole,      Ala.    , 81 South. Rep. 664; Gray v. City of St. Paul, 105 Minn. 19, 116 N. W. Rep. 1111; Reade v. DeLea, 14 N. M. 442, 95 Pac. Rep. 131.

A statute should not, by construction, be given a retrospective effect when it would jeopardize the validity of the statute or when it would make its application conflict with organic law. See McCarthy v. Havis, *supra;* St. Louis & S. F. R. Co. v. Cross, 171 Fed. Rep. 480; Graves v. Dunlap, 87 Wash. 648, 152 Pac. Rep. 532.

A statute should not be so constructed or applied as to make it conflict with organic law, when a construction or application conformable to the constitution is practicable and the legislative intent is not thereby thwarted, since it must be assumed that the Legislature contemplated the enactment of a law that would conform to the constitution and that it would be applied to classes of cases in which it may be validly enforced. See Singer Sewing Machine Co. v. Attorney General of State of Alabama, 233 U. S. 304, 34 Sup. Ct. Rep. 493; United States Fidelity & Guaranty Co. v. United States for use and benet of Struthers-Wells Co., 209 U. S. 306, 28 Sup. Ct. Rep. 537.

While, by virtue of the sovereign powers and duties of the State to preserve its efficiency as a government "for the protection, security and benefit" of its citizens,

as is expressly contemplated by Section 2 of the Declaration of Rights of the State Constitution, the "inalienable" right of "acquiring, possessing and protecting property," secured to "all men" by Section 1 of the Declaration of Rights. is subject to valid statutory regulations under the police power of the State to conserve the general welfare even though the regulations may *circumscribe the uses* of or *depreciate the value of* the property; yet such statutory regulations may not wholly destroy the right to acquire, possess and protect any species of property that had already been lawfully acquired and possessed for legal purposes, before the enactment of the statute, and a reasonable opportunity to lawfully dispose of it is not afforded before its seizure, unless, because of its nature, the property jeopardizes the public health, safety, morals or general welfare, or unless the property is knowingly used in violation of law to the detriment of the public. See Board of Police Commissioners for City of Baltimore v. Wagner, 93 Md. 182, 48 Atl. Rep. 455; Chicago & A. R. Co. v. Tranbarger, 238 U. S. 67, 35 Sup. Ct. Rep. 678. All property, whenever acquired, is subject to valid statutory regulations to the end that it may not be so used as to injure others or to impair public rights or to jeopardize the public welfare; but after property is lawfully acquired for a legal purpose, it may not by virtue of a statute enacted subsequent to the lawful acquisition and possession, be wholly destroyed under the police power of the State unless the possessor fails to dispose of the property as opportunity is lawfully and reasonably afforded, or unless, because of its inherent qualities, it directly jeopardizes the public welfare as a nuisance or otherwise, or unless, because of its use for, or in connection with, or in furtherance of,

an unlawful act or purpose, it impairs public rights or jeopardizes the public welfare, or perhaps unless it is declared to be a nuisance by a valid statutory enactment. See 1 Gray (Mass.) 1 : 61 and Dec. 381; McGehee Due Process of Law 203. There might be vested rights in wines as property, but not in its traffic. See Commonwealth v. Intoxicating Liquors, 107 Mass. 396; Gray v. Kimball, 42 Me. 299. The seizure in this case is because of mere possession, not because of the manufacture of or traffic in the wine.

Property is acquired and held subject to then existing laws, and also subject to future enactments that reasonably *regulate* its use in the interest of the public welfare. But property already lawfully acquired for legal purpose, is not subject to be wholly destroyed by virtue of the police power, under statutes enacted after the lawful acquisition of the property, unless the property is of such a nature that it has become or been adjudged to be or declared by a valid law to be a nuisance, or unless it otherwise endangers the public safety, health or welfare, or unless it is designedly used for, or in connection with, or in furtherance of, an illegal act or purpose that injuriously affects public rights or the general welfare. See Grand Trunk Western R. Co. v. City of South Bend, 227 U. S. 544, 33 Sup. Ct. Rep. 303; Chicago & A. R. Co. v. Tranbarger, 238 U. S. 67, 35 Sup. Ct. Rep. 678; Mill Creek Coal & Coke Co. v. Public Service Commission, —— W. Va., ——, 100 S. E. Rep. 557. Taylor Due Process of Law P. 405.

A valid exercise of the police power of the State cannot be stayed by the acquisition of property after the enactment of a statute declaring such property to be noxious and making the possession of it unlawful, even

though the property is acquired before the enactment takes effect or becomes operative, it being within the power of the Legislature to enact such a law to become effective or operative at a future day. In such a case the noxious property is acquired with full notice of its infirmity and that after a day certain its possession will by mere lapse of time be unlawful. Barbour v. Georgia, 249 U. S. ——, —— Sup. Ct. Rep. ——. Not until the enactment of Chapter 7736, Laws of Florida, approved December 7, 1918, was the mere possession of alcoholic or intoxicating liquors or beverages, whether spirituous, vinous or malt, authoritatively and validly declared to be unlawful in this State. The validity of this enactment was duly tested and sustained April 19, 1919. Morassa v. Van Pelt, 77 Fla. 81 South. Rep. 529. This seizure was made January 28, 1919.

Wine is not inherently dangerous or a nuisance by reason of the mere possession of it, as may be poisons, explosives, vicious animals, infected articles, unwholesome food and the like. It may be used for lawful purposes, therefore it is not in a class with gaming devices, counterfeit money and the like that are used only for unlawful purposes. See State v. Derry, 171 Ind. 18, 85 N. E. Rep. 765; Regina v. Williams, 1 Carr. & Marsh (41 E. C. L.) *259; Ford v. State, 85 Md. 465; 37 Atl. Rep. 172; Ex Parte Holcomb, 2 Dillon C. C. 392; 12 C. J. 1251; Luck v. Sears, 29 Ore. 421, 44 Pac. Rep. 693. The wine in this case was not obtained in violation of law as was game in Smith v. State, 155 Ind. 611, 58 N. E. Rep. 1044; Roth v. State, 51 Ohio St. 209, 37 N. E. Rep. 259; People of the State of New York ex rel. Silz v. Hesterberg, 211 U. S. 31, 29 Sup. Ct. Rep. 10; nor does it obstruct or impair public rights as in Lawton v. Steele,

119 N. Y. 226, 23 N. E. Rep. 878; Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. Rep. 499, and does not jeopardize the rights of others or of the public welfare; nor is it an incipient nuisance. It cannot be classed with adulterated, impure or unwholesome food, or as infected or noxious articles, garbage, etc. See 199 U. S. 306; 199 U. S. 325; 211 U. S. 306; 228 U. S. 572, 584; Berry & Ackley v. DeMaris, 76 N. J. L. 301, 70 Atl. Rep. 337; Orlando v. Pragg, 31 Fla. 111, 12 South. Rep. 441, 19 L. R. A. 196; 12 C. J. 1251; State v. Nejin, 140 La. 793, 74 South. Rep. 103; Freeman v. Pierce, 179 Ind. 445, 101 N. E. Rep. 478; Park v. State, *supra*.

In view of the agreed statement of facts indicating that the wine in this case was lawfully acquired and possessed before the adoption and enactment of laws making such possession unlawful, and indicating also that such continued possession is reasonable under the circumstances and for stated purposes that are not unlawful, the claimants not having had a reasonable opportunity to release such possession, and the agreed facts do not show a purpose to violate any law, or any liability of the wine to become a nuisance or to jeopardize the rights of others or the public welfare, and in view of such organic guaranties of property rights, both Federal and State, as are not affected by the amendment to Article XIX of the State Constitution, and in view of the assumption that the Legislature intended an enactment that would not be of doubtful validity, it seems clear that the provisions of Chapter 7736, which statute was enacted to make the organic amendment to Article XIX effective, do not apply to the wine that was acquired and is held in possession. as shown by the agreed statement of facts in this case, such wine not being a nuisance or otherwise a public

menace or connected with any unlawful purpose. A nuisance may be abated, but unoffensive private property may not be arbitrarily detsroyed. See Kansas v. Ziebold, 123 U. S. 623, text 669, 8 Sup. Ct. Rep. 273.

Apparently the claimants have had no opportunity to lawfully relieve themselves of the possession of the wine since the new law was adopted. Neither the statute nor the facts shown make the mere possession of the wine a nuisance. See Mugler v. State of Kansas, 123 U. S. 623, 8 Sup. Ct. Rep. 273, and other cases where the traffic in or possession of liquors is declared to be a nuisance. In Phelps v. Racey, 60 N. Y. 10, and like cases, the property was "acquired subsequent to the passage of the Act, with the presumed knowledge of its provisions and conditions." See also Barbour v. Georgia, *supra;* Northern Commercial Co. v. Brenneman, 259 Fed. Rep. 514; O'Rear v. State, 15 Ala. App. 17, 72 South. Rep. 505; State v. Certain Intoxicating Liquors, —— Utah, ——, 172 Pac. Rep. 1050; Marasso v. Van Pelt, 77 Fla. 432, 81 South. Rep. 529.

Under the decision of this Court in Ex Parte Francis, 76 Fla. 304, 79 South. Rep. 753, a statute could not be effective to forbid, and impose a penalty for, the mere possession of intoxicating liquors, wines or beers while original Article XIX of the State Constitution was in force. The amendment to Article XIX, was adopted at the polls November 5, 1918. Under amended Article XIX, when it became effective Jan. 1, 1919, the mere possession of liquors in excess of stated quantities is since Jan. 1, 1919, lawfully forbidden and punished by virtue of the statute here considered in cases to which the statute is legally applicable. Chapter 7736; Marasso v. Van Pelt, *supra.* This statute was approved December 7, 1918,

to take effect January 1, 1919, concurrently with amended Article XIX. The wines in this case were seized January 28, 1919. The claimants thus had about fifty-one days after the enactment of Chapter 7736 Acts of 1918, authorizing the seizure made in this case, in which to dispose of wines previously lawfully acquired and held by them; but the agreed statement of facts shows that the wine was bought as an accommodation for use on a foreign vessel and that an opportunity had not been afforded for delivering it to the owners. It was unlawful to sell the wine where it was held in possession; and as the claimants apparently violated no law in having it in their possession when Chapter 7736 was enacted, the length of time, fifty-one days, during which the claimants held the wine in their possession after the enactment of Chapter 7736, does not seem unreasonable, in view of the disposition designed to be made of the wine, so as to make it subject to the condemnation of Chapter 7736.

The Eighteenth Amendment to the Federal Constitution forbidding the manufacture, sale, transportation, importation or exportation of intoxicating liquors for beverage purposes, does not become effective as an organic prohibition until January 16, 1920, and the agreed facts do not show an unlawful intent to illegally sell, transport or export the wines seized in this case.

The order appealed from is reversed.

BROWNE, C. J. AND TAYLOR, ELLIS AND WEST, concur.