QUESTIONS: 1. Who shall collect the $10 contribution required of parolees and probationers by s. 18, Ch. 74-112, Laws of Florida (s. 945.30, F.S.)? 2. Does the fact that certain positions are federally funded alter the requirement to collect this contribution? 3. Into what fund are these moneys to be paid? 4. What is the effect on Florida parolees and probationers supervised in another jurisdiction, and vice versa? 5. Is the act retrospective? 6. Is the blanket exemption issued by the commission lawful? 7. May contributions be collected retroactively if the exemption is improper?
SUMMARY: The Parole and Probation Commission — not the several clerks of the circuit court — is responsible for the collection, accounting, and disbursement of the $10 monthly contributions required to be paid by parolees and probationers pursuant to s. 18, Ch. 74-112, Laws of Florida. The funding of any individual parole or probation supervision position by federal grants does not operate to inhibit or restrict the collection of the contributions or payments or require special accounting procedures. Unless a trust fund is established by the administration commission pursuant to s. 215.32(2)(b)1., F.S., the contributions will be deposited to the General Revenue Fund. Application of s. 19, Ch. 74-112, supra, to Florida parolees and probationers under supervision in another state and to parolees and probationers from another state under supervision in Florida appears to be an appropriate subject for an interstate compact. Section 18, Ch. 74-112, supra, is not applicable to or operative on any person placed on parole or probation before July 1, 1974. Although presumptively valid as an administrative construction of a statute, the Parole and Probation Commission's granting of a blanket exemption from payment of the contributions appears to have been without authority. It would be neither administratively nor legally feasible for the commission to attempt to collect those contributions which were not paid during the blanket exemption. Since the statute specifies that the $10 monthly contribution is to be exacted "toward the cost of . . . supervision and rehabilitation," unless exempted therefrom by the Parole and Probation Commission — or, as expressed in the title of the act, "to authorize payment for cost of supervision and rehabilitation," — it would appear that the commission is the agency of the state responsible for collecting the $10 monthly contributions required by the statute to be paid by probationers and parolees under the supervision of the commission. The act does not authorize or require the circuit court clerks to collect such contributions or exactions, nor does it impose any duties on the clerks of court in that regard. Neither is there anything in Ch.28, F.S., governing the circuit court clerks and prescribing their powers and duties which authorizes or requires, or imposes any duty upon, such clerks to collect or account for or disburse these statutory exactions. Moreover, Item 877A of Ch. 74-300, Laws of Florida (the General Appropriations Act), made a special lump sum appropriation of $363,620 for "Florida Correctional Act of 1974" (Ch. 74-112, Laws of Florida) from the General Revenue Fund of the state. Thus, I must conclude that the several clerks of the circuit court have no authority or responsibility to collect and account for, or to disburse, the payments made by parolees or probationers toward the cost of supervision and rehabilitation by the Parole and Probation Commission. As to the possible need for special accounting procedure to be used when the contributions or payments are collected from a parolee or probationer who is under the supervision of a Parole and Probation Commission officer provided for by a federal grant of funds, the statute does not differentiate as to the cost of supervision and rehabilitation by individual parole or probation supervisors. No distinction is made as to whether their positions are funded wholly or partially by federal grants, wholly or partially by state funds or appropriations, or out of trust funds established pursuant to s.215.32, F.S. The law operates on the affected parolee or probationer and requires him or her to contribute toward the cost (to the state) of his or her supervision and rehabilitation. It is the commission that has the power and duty to supervise all persons placed on parole, s. 947.13, F.S., and it is on the commission, and under its supervision and control, that the courts place the responsibility for probationers. Sections 948.01 and 948.02, F.S. Certainly the state and its agency, the commission, incur cost of supervision and rehabilitation in many ways irrespective of any federal grants or funding or the provision in whole or in part of employees or staff members of the commission through federal funds or grants; and in the absence of any valid limitations and provisions in the federal grants or contracts — and my attention has not been directed to any — to the contrary, the funding of any individual parole or probation supervision position by federal grants does not operate to inhibit or restrict the collection of the contributions or payments in question by the commission. If for any reason there should be any problems as to accounting mode or procedure in this respect, such mechanical aspects of accounting should be taken up with the Auditor General. In determining which fund the contributions or payments so collected by the commission are to be deposited into or credited to, s. 215.31, F.S., requires all revenues, fees, or exactions collected or received by any state official or any state agency or commission to be promptly deposited in the State Treasury and credited to the appropriate fund or funds designated by s. 215.32, F.S. The statute expressly provides the purpose to which the required contributions are to be devoted — cost of supervision and rehabilitation — and in my opinion segregates the moneys received therefor within the meaning of s. 215.32(2)(b)1. It would therefore appear that the Administration Commission (Governor and Cabinet) of the Department of Administration has the authority and power to establish a trust fund to preserve the integrity of the required contributions received or collected by the Parole and Probation Commission for the specific use or purpose that Ch. 74-112, supra, authorizes and prescribes and for which the act segregated such moneys. If this procedure is not followed, such moneys would necessarily have to be deposited in and credited to the General Revenue Fund and could not be expended by the commission, nor paid from the State Treasury, until such time as the Legislature might make an appropriation therefor or might create a trust fund for such purposes by statute. See Advisory Opinion to the Governor, 200 So.2d 534 (Fla. 1967); and Advisory Opinion to the Governor, 201 So.2d 226 (Fla. 1967). The Parole and Probation Commission should apply to the Administration Commission to establish an appropriate trust fund and for authorization for the Parole and Probation Commission to execute the trust as provided by the applicable fiscal laws for the purposes authorized and prescribed by Ch. 74-112, supra. The matter of Florida parolees and probationers under supervision in another state, and of parolees and probationers from another state under supervision in Florida, seems to be an appropriate subject for a compact under the uniform law for out-of-state probation and parole supervision (ss. 949.07-949.09, F.S.), and rules and regulations of the Parole and Probation Commission to carry out the terms, conditions, and intents of any such compact (s. 949.08). As to the retrospective application of this statute, s. 18 (s. 945.30, F.S.) of Ch. 74-112, supra, took effect July 1, 1974. There is no expressed legislative intent that the act extend to or affect any antecedent rights or obligations or disabilities. Ordinarily, statutes affecting such matters are addressed to the future, are given prospective effect only, and will not be given retrospective application unless it is clearly required by the terms of the statute or is so unequivocally implied as to leave no doubt as to the legislative intent. In re Seven Barrels of Wine, 83 So. 627
(Fla. 1920); Trustees of Tufts College v. Triple R. Ranch, Inc.,275 So.2d 521 (Fla. 1973). My examination of s. 945.30, supra, does not disclose any clear and unequivocal terms or language requiring retrospective operation or application. The language, "from the date he is free to seek employment," (Emphasis supplied.) itself speaks of the future. It would seem that one could not be "free" to seek employment until after he is in fact placed on parole or probation, and the 60 days could not begin to run until that date at the very earliest. Neither could such terms and conditions — $10 payment — be included in the parole order of the commission or in the probation order of the courts before that time. In the absence of some specific language in the statute clearly requiring such retrospective application — and no clear and unequivocal implications to that effect can be found in the statute — the statute applies only to, and operates only on, those persons placed on parole or probation on and after July 1, 1974. As to those parolees and probationers antedating July 1, 1974, no such condition is included within the terms of their parole or probations and any retrospective application of the statute to those persons might well be taken to impair a preexisting right or alter and change preexisting obligations and impose a new obligation or duty or attach a new disability. Section 945.30 does not make the $10 contribution a condition of a preexisting parole or probation, nor does it make nonpayment thereof a violation of the terms and conditions of any preexisting parole or probation. Thus, it is my conclusion that the statute is not applicable to or operative upon any person placed on parole or probation before July 1, 1974. The action taken by the Parole and Probation Commission of granting a blanket exemption to all parolees and probationers does not appear to have been within the commission's authority — under Ch. 74-112, supra, or otherwise. However, it would be fair to note that the granting of the blanket exemption appears to have been the result of the commission's misinterpretation — presumably in good faith — of a statutory provision. The act does empower the commission to grant exemptions to individual parolees and probationers if the commission finds any of a number of specifically stated circumstances to exist or if it finds the existence of "other extenuating circumstances." It is this last general phrase upon which the commission apparently based its action. However, the five specifically stated reasons for exemption all relate to circumstances involving the parolee or probationer — such as inability to find a job — and not to administrative problems of the commission. The ground reflected in the minutes of the commission — "until such time as there is staff to implement the law" — for the granting of the blanket exemption is not one of the factors for exemption specifically enumerated in s. 945.30, F.S., nor is this ground or factor like or akin to, or of the same character as, any of the specifically enumerated factors in the statute. Under the longstanding rule of statutory construction, ejusdem generis: . . . where general words follow an enumeration of things by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. [Smith v. Nussman, 156 So.2d 680, 682
(Fla.App. 1963).] This doctrine has long been recognized — apparently without modification — by the Florida courts. The above language from Smith v. Nussman is virtually identical to language in the venerable case of Van Pelt v. Hilliard,78 So. 693, 697 (Fla. 1918), which also stated that, "the words `other' or `any other' following the enumeration of particular classes are to be read `as other such like,' and include only others of like kind or character." This is not to say that the commission's action has no effect. Its administrative construction of the statute is presumptively valid and, presumably, the order will stand unless it is challenged in court and there found to have been issued without authority of law. As to the question of retroactive collection of the contributions which would have been payable but for the blanket exemption, it should be noted that, just as the statute contains no provision allowing retroactive application to persons placed on parole or probation before July 1, 1974, neither does it appear to contain any provision which would allow retroactive collection of the payments from those persons placed on parole or probation on and after July 1, 1974, but from whom the payments were not collected because of the blanket exemption. Additionally, it would be predicted that, under general principles of equity, the fact that the nonpayment of the contributions was the direct result of the official action of the Parole and Probation Commission — taken by that body pursuant to what may be presumed to be its good faith misinterpretation of the act — would make it likely that a successful defense could be raised by a parolee or probationer from whom the commission might later try to collect the contributions which were exempted. Finally, it must be considered that there may be a number of the parolees and probationers subject to the blanket exemption who would have been entitled to individual exemptions under one or more of the factors specifically stated in s. 18 of Ch. 74-112, supra. It would probably be quite difficult to determine, after the fact, which of the parolees and probationers would have been entitled, as of August 28, 1974, to exemptions under the statute absent the blanket exemption. Thus, it could be said that it would be neither legally nor administratively feasible for the commission to attempt to collect such contributions or payments which were not paid during the period when the blanket exemption rule or policy was, or continues to be, in force and effect.