O’CONNELL, Justice.
Petitioner, a public utility furnishing sew•er and water service to two areas in Broward County, seeks review of an order of The Florida Railroad and Public Utilities Commission denying a requested increase in rates but allowing a lesser increase.
The petitioner, which began operations in 19S5 and 1956, became subject to the. Water and Sewer Regulatory Law, Chapter 367, F.S.A., in September 1959 by virtue of .a resolution of the Board of County Commissioners of Broward County.
Thereupon petitioner, pursuant- to the statute, applied for and received certificates of public convenience and necessity. The rates then being charged by petitioner became its lawful rates and charges. Sec. 367.12(1). Petitioner also filed an engineer’s report purporting to establish the fair value of petitioner’s property used and useful in the public service, as of June 18, 1959, as required by Sec. 367.12(2).
Thereafter in September 1960, in accordance with Sec. 367.14(2), the petitioner notified the Commission that it desired to increase its rates for both of its operations.
A public hearing was had after whicu the Commission entered its order denying the requested increased rates, but allowing lesser increases.
In its order rejecting the proposed rates the Commission said:
“ * * * The utility was only incorporated in 1953 and has served new residential areas in Broward County and the City of Plantation which are continuing to be developed. The utility apparently recognizes that no rate of return on its property can yet be expected if its rates are to stay within reason. The utility has, therefore, merely proposed an increase in rates to minimize the annual loss that it has experienced during every year of its operations.
“Ordinarily, in a case of this kind, a utility would attempt to exercise its right under the law to obtain a fair return on the investment in its property used and useful in the public service. The fair return on such investment would be determined with relation to a rate base which would represent the ‘fair value’ of the property of the utility which was used and useful in the public service. However, where, as here, the utility does not seek a fair return and in fact only proposes rate increases which by any reasonable computation would still not produce sufficient revenue to avoid an annual loss on the utility’s operations, it is unnecessary for a rate base to be established since its only purpose would be to determine the extent to which the utility failed to make any return. In other words, in the case at hand, the Commission does not have before it the issue of whether the rates proposed by the utility are sufficient and compensatory. It is admitted by the utility that the proposed rates are neither sufficient nor compensatory. The only question remaining to be determined, therefore, is that of whether the proposed rates are just and reasonable from the public point of view in relation to the services received from the utility by its customers.”
* * # ❖ * *
“The Commission, thus being confronted with a record in this proceeding which consists almost entirely of the utility’s uncontroverted case, must of necessity base its findings on that case with certain exceptions hereafter noted. Admitting this, however, the fact remains, as stated before, that there is no issue before this Commission with respect to whether the proposed rates are compensatory or sufficient to produce a fair return. Hence, *856 none of the facts proved by the utility need he accepted by the Commission as proof or evidence that the utility is entitled to any given rate of return, or for that matter, to any given rate of loss. The testimony and exhibits produced at the two hearings will, therefore, only be considered to the extent that they may have bearing on the question of whether the proposed rates are just and reasonable from the point of view of the general public interest and of the customers served by the utility.”
As stated in the foregoing order the Commission was of the view that since petitioner was not seeking a fair return on its investment it was unnecessary to determine “the fair value of the public utilities property used and useful in the public service.” In other words, the Commission felt it was unnecessary to establish a rate base.
Apparently the petitioner proceeded on much the same theory. Its general manager testified:
“We have not tried to establish a rate base and we are not asking for a return on a rate base. We are asking for the operating expenses to keep you going until such time as either the County takes you into a sanitary district or the City of Fort Lauderdale annexes you.”
However, the petitioner did offer proof of the fair value of its property in form of an amended engineer’s report which reflected the initial fair value of the petitioner’s property as of June 18, 1959, the effective date of the subject statute, which value was based on reproduction cost less depreciation, plus additions to the petitioner’s plants and lines made since June 1959. The fair value of said additions was based on actual cost.
At the hearing it developed that the fair value of petitioner’s property as based on reproduction cost, less depreciation, resulted in an increase in value of said property of approximately 60% over the value of said property as it was carried on petitioner’s books just prior to June 18, 1959. Said property had then been carried on petitioner’s books at original cost, less depreciation.
This difference in value obviously caused consternation on the part of the Commission and the protestants, for the Commission in its order indicated that it did not feel that the evidence of values was credible.
As indicated in the Commission’s order the petitioner’s case was almost uncontro-verted.
While one witness, an engineer, testified for respondents on the question of value of petitioner’s property used and useful in the public service, his testimony was inconclusive. There was no evidence offered disputing petitioner’s proof of the losses it had sustained and would sustain under the present and proposed rates.
During the hearing the attorney representing the Board of County Commissioners suggested that the Commission recess the hearing and then after sufficient preparation reconvene it in order to determine the fair value of petitioner’s property.
However, the attorney for the Commission explained in the record that because time was running out on the order suspending the proposed rate increases the Commission could not delay the completion of the hearing. In its order the Commission further explained that the accounting and engineering members of its staff could not be diverted from other duties in time to prepare to testify in the cause.
The respondent Commission in its order, in its brief, and in its argument before us takes the position that inasmuch as the petitioner did not seek rates which would give it a fair return on its property, as guaranteed it under the statute, the Commission is free to set any rates it chooses which are “just and reasonable from the public point of view in relation to the services received from the utility by its customers.”
*857 The petitioner on the other hand contends, in effect, that while the Commission has the duty and power to determine rates that are just, reasonable, sufficient and compensatory, when the rates requested are admittedly less than compensatory the Commission has no discretion to deny the rates requested and has no authority to require the utility to suffer a greater loss than it is willing to voluntarily assume.
We think the petitioner’s contention is correct.
As the Commission explained in its order, in the ordinary case “ * * * a utility would attempt to exercise its right, under the law to obtain a fair return on the investment in its property used and useful in the public service. The fair return on such investment would be determined with relation to a rate base which would represent the 'fair value’ of the property of the utility which was used and useful in the public service.”
In such a case the Commission in determining the rates also must consider whether the rates are fair to the public using the utility’s services, i. e. that they are just and reasonable for the services rendered.
Thus in the ordinary case the Commission must establish rates which are fair not only to the utility, i. e. give it a fair return on its property, but fair also to the consuming public, i. e. are just and reasonable for the service tendered.
In this case, however, the Commission came to the conclusion that since the utility was not seeking rates which would give it a fair return but “ * * * which by any reasonable computation would still not produce sufficient revenue to avoid an annual loss on the utility’s operations,” it was under no obligation to consider the interest of the utility, and was only obligated to consider “ * * * whether the proposed rates are just and reasonable from the public point of view in relation to the services received from the utility by its customers.”
In this the Commission erred.
The Commission’s authority under the statute is to fix rates which are “ * * * just, reasonable, sufficient and compensatory * * Sec. 367.14(1). Under Sec. 367.14(7) the Commission is required to establish rates which will provide the utility a fair return on the fair value of the property of the utility used and useful in the public service. This last mentioned subsection prescribes the factors which the Commission shall consider in fixing rates which will provide a fair return to the utility.
There can be no doubt that had the utility here asked for rates which would provide a fair return the Commission under the statute as well as the case law would have been required to give consideration to all the factors set forth in Sec. 367.14(7). It could not have properly based its decision solely on a consideration of " * * * whether the proposed rates are just and reasonable from the public point of view * * as it did in this case.
We do not believe that the fact that the utility does not ask for all that it could lawfully claim in the way of rates, i. e. for rates which would produce a fair return, relieves the Commission of the responsibility of making its decision according to the standards established by the legislature in the subject statute.
Whether a utility asks for rates which will give it a fair return or less than a fair return, it seems to us that the Commission must, nevertheless, determine what rates would provide a fair return and in so doing must'follow the standards prescribed by the legislature.
If, in a case such as this, the rates requested by the utility are less than the rates which the Commission determines would furnish a fair return then, in the absence of some factor which would in the *858 public interest require that larger rates be charged, the rates requested by the utility ought to be allowed by the Commission.
If a utility is entitled to the whole, i. e. a fair return, it is only logical that it is entitled to a part of the whole, i. e. rates which will produce less than a fair return.
Therefore, in the absence of some showing that the service to the public will suffer by allowing the utility to charge rates which will not produce a fair return, the utility and not the Commission has the right of decision as to the rates it will charge so long as they do not exceed those which would produce a fair return as determined by the Commission.
In other words, the Commission has the power to establish the maximum rates which a utility may charge, but absent special considerations the utility has the right to determine the rates which it will charge within the maximum found by the Commission.
In this case, if considering all of the standards prescribed by the statute, the rates requested by the utility would in fact provide less than a fair return, the rates should have been approved. The Commission has no authority to force the utility to suffer a greater loss than it is willing to assume voluntarily. Such would be an unconstitutional taking of property without due process of law.
In this case as above noted both the utility and the Commission proceeded on the theory that since the utility was not seeking a fair return it was unnecessary to establish and determine a rate base.
As stated by the Commission in its order, if the utility had requested rates which would provide a fair return it would have been necessary for the Commission to determine a rate base.
While it seems to us that in order to decide, in a case such as this one, that the requested rates are less than those which would produce a fair return it would also be necessary to arrive at a rate base, we will not so decide here. We recognize that it is entirely possible that the evidence in. a case such as this one may so clearly establish that the rates requested will not produce a fair return as to make unnecessary the actual establishment of a rate base.
This would seem to be such a case, for the Commission in its order stated that the proposed rates here involved “* * * by any reasonable computation would still not produce sufficient revenue to avoid an annual loss on the utility’s operations * The record clearly supports this statement.
Therefore on remand the Commission may either enter an order allowing the requested rates based on the record already before it or, if it deem wise, it may proceed to establish a rate base. In the latter case,, it may hold such further proceedings and receive such further evidence as it may determine necessary to enable it to establish a rate base from which to determine what rates the utility will be allowed to. charge.
 In summary we have decided that in exercising the power to establish rates under the statute here involved, the Commission must give consideration to all the standards prescribed by the legislature and that the mere fact that a utility requests rates which will provide less than a fair return does not relieve the Commission from observance of such standards. We have further decided that if the rates requested by a utility are less than those which would provide a fair return the Commission must approve the rates unless it be shown that approval of such rates would cause the service rendered the public to suffer, in which event the Commission could require higher rates to be charged. We have observed that it seems logical1 that a rate base should be established in every case in which rates are to be fixed, but we have not decided that such must be done in cases where it is patent that the rates requested are less than sufficient to provide a fair return to the utility.
*859 We have not here been concerned with the valuation to be placed on the property of the utility used and useful in the public service nor the formula to be used in arriving at a rate base upon which a fair return would be computed because these features are not necessary to this decision.
For the reasons above expressed the petition for writ of certiorari is granted and the writ is issued. The order of the Commission is quashed and the cause remanded for further proceedings consistent with this opinion.
It is so ordered.
ROBERTS, C. J., DREW and THOR-NAL, JJ,, and WALKER, Circuit Judge, concur.