## Application of NORTH BROWARD UTILITY CO.
No. 6472-S.

Railroad & Public Utilities Commission.

October 2, 1962.

Howard C. Osterman, Margate, for the applicant.

Joseph Easthope and Joseph P. Canouse, County Attorney's Office, Fort Lauderdale, for the Board of County Commissioners, Broward County, and the Lyons Park Civic Association, protestants.

Chairman WILBUR C. KING, Commissioners JERRY W. CARTER and EDWIN L. MASON participated in the disposition of this application.

BY THE COMMISSION.

Pursuant to notice, public hearings were held on this application on January 18 and March 7, 1962, in the commission's hearing room in Tallahassee.

The entire record herein, including the application and the testimony adduced at the public hearings, has all been examined by the full commission. Being fully advised in the premises, the commission now enters its order.

The applicant is a Florida corporation operating a sewer service in the vicinity of Pompano Beach in Broward County. It was certificated by this commission in June, 1961 following the adoption by the board of county commissioners of Broward County on September 29, 1959 of the resolution which made the water and sewer system regulatory law (chapter 367, Florida Statutes) effective in Broward County.

By its application in this docket, North Broward Utility Company seeks to increase its residential rates for sewer service from their present level of $3 for a one-bath home and 50c for each additional bath to $5 for a one-bath home and $1 for each additional bath. According to evidence produced at the hearings the proposed rate increase would generate an increase in gross revenue of between 66 and 68%. The company maintains that such an increase is necessary in order for it to offset the losses it has experienced through its operations and in order to allow it to make its operations profitable. The company has estimated that increases in rates up to $12 for a one-bath home and $14 for a two-bath home would be necessary in order for it to realize a fair return on the fair value of its property.

This application must be processed in the manner contemplated by sub-section (7) of section 367.14, Florida Statutes, which provides that water and sewer utilities should be allowed by the commission to earn a fair return on the fair value of the property of the utility which is used and useful in the public service. The valuation of such property is to be evidenced by an engineering report which is required by section 367.12 (2), which is supposed

to be the value of the plant as of the date that it came under the jurisdiction of this commission, or in other words, the date that the Broward County board of county commissioners adopted the resolution referred to above. With such engineering report representing the initial fair value of the property of the public utility, all net additions subsequent to the date of such appraisal are to be valued at their original cost.

The commission's difficulties in applying this provision of law have already been discussed at some length in order no. 3425 entered in dockets nos. 6426-W, 6427-W and 6428-S [Application of Florida Water Service, Inc., 20 Fla. Supp. 10]. The various interpretations applied in that order are also applicable with regard to this one and are adopted by reference.

The rate increase proposed by the applicant as already noted is considerably less than that which the company feels it could justify if it were to seek the full amount of revenue necessary for it to earn the "fair return" to which it is entitled under chapter 367, Florida Statutes. Based on our calculations from the evidence before us we must concur in the conclusion that the increase in rates sought here will not allow the applicant to earn such "fair return." This commission is apparently without authority to substitute its judgment for that of the utility management when it comes to determining rates which produce less than a "fair return" but which are not so low as to jeopardize the company's ability to fulfill its obligations as a public utility (See *Utilities Operating Co., Inc. v. Florida Railroad & Public Utilities Commission*, Supreme Court of Florida, opinion filed July 6, 1962, petition for rehearing denied September 24, 1962, 143 So.2d 854.) So the issue to be determined here is not whether the proposed rates are fair, reasonable or sufficient to produce a fair return, but whether they will produce more than a fair return and if they do not, whether they are so low as to endanger the company's ability to continue to provide adequate and efficient service to its customers. With only these questions to be determined it is not necessary that we go into as great detail as would be necessary if the company were seeking a full return to which it might be entitled. It should, therefore, be sufficient to state our findings very briefly.

We have found the proper rate base figure to be $387,112.66 as opposed to the figure advanced by the company of $490,091.46. The difference is occasioned primarily by our arriving at the depreciation reserve figure on a different basis from that employed by the company and by our deduction from the rate base of all contributions in aid of construction received by the company between September 29, 1959 and June 30, 1961, the end of

the test year used in these proceedings. Other differences pertaining to cash working capital and the material and supplies inventory had a combined effect of less than $2,000 in reducing the company's rate base figure to that approved above.

We have found the company's operating revenue to be, as claimed, $19,935.10 for the test year. From this there have been deducted test year operating expenses of $25,838.10 which are greater than those computed by the company because of our allowance of depreciation expense in conformity with required utility accounting procedures as we did in order no. 3425 mentioned previously. This results in our finding a net operating loss for the test year of $5,903. If the increased rates proposed by this application had been in effect during the entire test year, the company would have realized with the same number of customers a gross operating revenue of $33,613.35. Applying test year operating expenses approved above and increased only to make allowance for additional tax expenses known to be necessary, the net operating income for the test year under the proposed rates would have been $5,089.74.

The rate base used in computing the rate of return that would have been earned during the test year if the proposed rates had been in effect throughout such year, has been reduced from the $387,112.66 to $366,022.01 because of our treatment of the so-called income tax lag. Thus using a pro forma rate base of $366,022.01 and a pro forma net operating income of $5,089.74 we conclude that even with a 68.61% increase in gross revenue the company's rate of return would still be only 1.32%.

Under the circumstances the commission must find that a rate of return of 1.32% is less than a fair and reasonable rate of return, but not so low as to interfere with the proper operations of the utility. Evidence to support this conclusion is found in the company's past experience in that it has managed to continue adequate operations over a number of years although they resulted in a net loss every year. Also it will be noted that the proposed rates are sufficient to cover not only actual operating expenses, but to allow in addition ample provisions for accumulation of depreciation reserves to insure that the plant and system can be maintained in good operating condition by replacing the components thereof which from time to time will have to be retired.

We cannot conclude without again expressing our disapproval of existing conditions under which a utility, protected and supposedly regulated by law, can within the confines of such law enforce a grossly precipitous 68.61% rate increase on customers who have no choice but to pay the increased rates if they wish

to continue receiving the service furnished by the utility. Surely this is an obvious case of the utility receiving more protection from the law than the public in whose interest the utility is regulated. Thus far this commission has given final consideration to the records made in support of rate increase applications filed by only four of the water and sewer utility companies which have come under its jurisdiction since 1959. In each of these cases the amount of the rate increases sought by the companies has been staggering. It is our sincere hope that the present condition of the law which permits such dire results as this may soon be altered.

However, in consideration of the requirements of the law and the facts elicited in support of this application it is ordered that the application filed herein be and the same is hereby granted, and that North Broward Utility Company be allowed to put into effect rates and charges which will generate gross operating revenue not in excess of $33,613.35 annually; provided, however, that such rates shall not become effective until 30 days after the date hereof assuming that appropriate tariff amendments have in the meantime been approved, otherwise not until such approval is granted.