**Application of CORAL HEIGHTS UTILITIES, Inc.**

No. 6348-S.

Railroad & Public Utilities Commission.

December 10, 1962.

Eugene S. Heiman and Stanley C. Myers of Myers, Heiman & Kaplan, Miami, for applicant.

Nathan B. Rood, Coral Gables, for the applicant.

Fred R. Bland, Fort Lauderdale, for City of Oakland Park, protestant.

James L. Graham, Jr., Assistant General Counsel, for the commission staff and the public generally.

Chairman WILBUR C. KING, Commissioners JERRY W. CARTER and EDWIN L. MASON, each participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to due notice, the commission held public hearings on this application on January 10 and June 26, 1962 in the commission's hearing room in the Whitfield Building, Tallahassee.

The entire record herein, including the application and the testimony adduced at the public hearings, has all been examined

by the full commission. Being fully advised in the premises, the commission now enters its own order in this cause.

Coral Heights Utilities, Inc., was incorporated in 1956. In 1958 construction was completed on the sewer system which it operates within the city limits of Oakland Park, Broward County. By its application filed in this docket Coral Heights Utilities, Inc., hereinafter referred to as the company, seeks authority to increase its rates and charges for sewer service so as to realize in the future an anticipated net operating income of $6,051.88 annually as opposed to its present 1961 calendar year operating loss of $2,388.50.

To accomplish this the company contends that its gross operating revenue must be increased from the present figure of approximately $41,500 for the calendar year 1961 to approximately $60,500, annually. This is shown to be the expected result of increasing its rates from the present monthly flat rate of $4 for all connections to $5 for one bath residences and $6 for two bath residences.

This application may be disposed of in a relatively simple fashion in comparison to other water and sewer company applications for rate increases that have received our attention in recent months by applying to the record developed in this cause the principle laid down by the Supreme Court of Florida in Utilities Operating Co., Inc. v. King, 143 So.2d 854. As we interpret the opinion of the court in that case, this commission must grant the rate increase application of a company such as this if we find from the evidence before us that the increased rates sought by the company will not result in a rate of return in excess of what we find to be a fair return for such company on a rate base computed in accordance with the requirements of chapter 367, Florida Statutes, the Water and Sewer System Regulatory Law.

In this case we have found that if the increased rates proposed by the company had been in effect during 1961, the company would have realized a rate of return of 1.70% on the rate base figure arrived at in conformity with our understanding of the requirements of chapter 367. The company's calculation indicates a return of .85%. In both cases the returns are with reference to a rate base founded on the engineering report or appraisal which was submitted by the company in docket no. 6103-S in which it received its certificate.

From the record in this case the commission has concluded that the books of the company reflect an original plant cost to the company of $616,074. Although we are prohibited in this case from using this figure as a starting point in rate base calculation (see

section 367.14(7), Florida Statutes), it is appropriate for purposes of comparison to note that, were it used, the revenue increase proposed by the company would only result in an annual rate of return of 6.08%.

From this we must conclude that, regardless of the method employed to test the reasonableness of the rates here proposed, they are not excessive. Nor can it be said that they are so low as to jeopardize the ability of the company to continue to provide adequate and sufficient service, since they are sufficient to cover all operating expenses, including taxes and depreciation, and to cover at least its annual interest expense.

In view of this conclusion we have not considered it to be necessary to go into detail concerning the differences between our concepts of how the rate base should be computed and those of the company, nor shall we detail our differences concerning the computation of net operating income. It is sufficient under the circumstances to note that our rate base figure is $22,592.34 less than that contended for by the company and that our net operating income figure is $5,635.25 greater than the company's figure. Herein lies the difference in the rate of return figures, mentioned earlier, of .85% according to the company and 1.70% according to our calculation.

We are constrained to comment on one final matter. The evidence of record indicates that the company's plant has a design capacity sufficient to serve 2,000 residential connections, while as of December 31, 1961, it was serving only 807 paying connections, or 40.35% of its theoretical residential capacity. While these figures of themselves indicate that the plant is not fully used and useful in the public service, their weight is considerably offset by other evidence indicating that the plant is at least 75% used and useful in the public service and by still further evidence that the plant is actually treating daily on a gallonage basis more than it was designed and intended to treat.

Although these apparently conflicting statements are not resolved in the record to our satisfaction, we are not prepared to say that only 40.35% of the plant is used and useful in the public service. Also, if 75% is the proper figure, an appropriate reduction in rate base figures would still fail to increase the prospective rate of return beyond the point of reasonableness, although in a closer case this might not be so. Finally, we are confronted with the proposition that for some reason, possibly the infiltration of ground water into the system, the plant is working in excess of its intended capacity and that such infiltration is not uncommon in Broward County.

4

Under the circumstances of this case we feel it is sufficient to conclude that while something more than 40.35% of this plant is used and useful in the public service, it is not necessary to determine exactly how much more in view of our conclusion that such a determination would not alter our findings.

In consideration of the foregoing and the entire record in this matter, the commission finds that the revenue increase proposed by this applicant will not result in unreasonable, insufficient, or non-compensatory rates and that the application filed herein should, therefore, be granted.

It is accordingly, ordered that the application filed herein by Coral Heights Utilities, Inc. be and the same is hereby granted to the extent that said company be allowed to increase its rates and charges so as to allow a gross annual operating revenue not in excess of $60,500. It is further ordered that this order shall become effective on the 31st day following the date of its issuance and the increased rates hereby authorized may then be put into effect, provided in the meantime appropriate tariff amendments have been approved by the commission otherwise such rates shall not be effective until the date of such approval.