278 So.2d 606 (1973)
KEYSTONE WATER COMPANY, INC., Petitioner,
v.
William H. BEVIS et al., Respondents.
No. 42853.
Supreme Court of Florida.
May 9, 1973.
Rehearing Denied June 27, 1973.
*607 John E. Norris, Brannon, Brown, Norris, Vocelle & Haley, Lake City, for petitioner.
R.M.C. Rose, Tallahassee, for respondents.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to the Florida Public Service Commission.
Keystone Water Company, Inc., petitioner herein, has applied for an increase in rates and charges for water services to its customers in Clay County. Keystone's water system was built by G.E. Wiggins in 1924. The water company was incorporated by Mr. Wiggins in 1929. Mr. Wiggins is now deceased, but prior to his death, he had given to his five daughters 95% of the outstanding stock in the corporation. The other 5% passed to the five daughters equally at Mr. Wiggins' death.
Keystone was granted a Certificate of Public Convenience and Necessity on November 11, 1969, pursuant to the Clay County Commissioners adopting a resolution bringing Keystone under the jurisdiction of the Commission.
Mr. Wiggins worked for the corporation for little or no compensation, both prior to and after his gift to the daughters. No compensation is paid to any of the stockholders for their supervisory work, either as officers, directors or employees.
Pursuant to requirements of Statute, an appraisal of the Keystone system was made by an independent firm of Certified Public Accountants. The adjusted value of the Keystone system used and useful in public service as of December 31, 1970, making adjustments for depreciation, additions, and contributions in aid of construction, is $195,134.94. For the fiscal year 1969, the system lost $1,953.16. For the year 1970, it made $1,305.28 profit, for the total compensation of $261.25 to each of the five stockholders.
On May 6, 1971, Keystone filed its Petition for rate increase, praying for a rate of return of 7.25% on the "fair value" rate base of $195,134.94. This amount of $195,134.94 is undisputed to be the "fair value" of the utility as of December 31, 1970, after making all necessary adjustments, in accordance with Section 367.12(2)(a), Florida Statutes, 1969, F.S.A., which Statute was in full force and effect at the time of the making of application for rate increase and at the time of the hearing before the Examiner.
The Examiner's Recommended Order dated October 22, 1971, found that Keystone, which had 502 water customers, had a value of $41,244.00, which he stated was the rate base, and that Keystone should be allowed 10.31% return on such rate base, which would net the stockholders $4,252.00 per year.
The Hearing Examiner claimed to apply Section 367.12(2) (a), Florida Statutes, 1969, F.S.A., but arrived at the rate base of $41,244.00, which he determined to be the total value of the utility system, based upon the actual cost thereof, less depreciation as shown on the balance sheet of the corporation. These figures were based on actual cost of the materials and labor that went into the system, regardless of whether they were purchased in 1924, or 1970, less the actual depreciation that had accumulated over those years since 1924. The Examiner recommended a rate of 10.31% on such rate base, which would yield $4,252.00 annually.
*608 Exceptions to the Examiner's Recommended Order were promptly taken by Keystone. The cause was argued before the Full Commission on January 24, 1972. By its Order entered August 25, 1972, the Full Commission found that, with regard to value of the system as it affects rates, it was without jurisdiction to set rates based upon any criteria except the actual monetary investment in property used in the waterworks. Thus, the Commission found that the investment was $50,000.00, the amount of the capital stock of the corporation and actual cash equity of the shareholders as shown by the books of the corporation.
The Full Commission allowed a return of 8.5%. Thus, the Full Commission decided that for a 502-customer waterworks, the owners thereof would be entitled to $4,225.00 per year profit, or an average of $8.42 per customer, per year, for customers ranging from small household users to commercial users and schools. This would amount to an average of $.70 per month per customer.
Since there is no compensation made to any of the five stockholders as officers, directors or employees of the corporation, their total annual compensation for their ownership would merely be $850.40 each for a waterworks with a depreciated fair value of $195,134.94, if the Commission's Orders are allowed to stand.
We hereby reverse the decision of the Commission, for reasons which will be set out below.
We differ from the Commission's position in the following respects:
(1) The Statute in force at the time the Application was filed and in force at the time of the hearing in this cause was Section 367.12, Florida Statutes, 1969, F.S.A., which required the Commission to consider the "fair value" of the utility. The "fair value" of the utility is undisputed to be $195,134.94;
(2) Even if Section 367.081, Florida Statutes, 1971, F.S.A., was in full force and effect so as to govern this case, the 1971 law requires the Commission to fix rates which are just, reasonable, compensatory, and to consider the value and the quality of the service. This contemplates consideration that the value of the system is $195,134.94;
(3) To ignore the "fair value" of the utility in setting its rates would be a denial of due process and tantamount to taking of property without just compensation, in violation of Keystone's constitutional rights.

I
The Commission allowed that the rate base would have been $195,134.94, if the Statute had not been amended in 1971. Under Chapter 367, as it was applicable at the time Keystone became subject to the jurisdiction of the Commission, the law required the Commission to:
[I]nvestigate and determine the fair value of the utility's property used and useful in the public service... .[1]
The Commission's Order quotes Section 367.011(4), Florida Statutes, 1971, F.S.A.,[2] and concludes that the 1971 law which went into effect September 1, 1971, had retrospective operation and affects all cases upon which the Commission ruled after September 1, 1971, regardless of when the Petition was filed or the case heard.
If the Legislature had intended this to apply to all cases that had been previously filed and heard, it should have so stated.
A Statute is not to be given retrospective application unless it is required by the terms of the Statute or it is unequivocally *609 implied. In re Seven Barrels of Wine.[3]
The law is substantive rather than procedural, and the application of Section 367.081, Florida Statutes, 1971, F.S.A., by the Commission, constituted a retrospective application of a Statute dealing with substantive rights.

II
In establishing rates, the Commission must give consideration to all the standards prescribed by the Statute. Utilities Operating Co. v. King.[4]
Even the 1971 Statute requires the rates to be just, reasonable and compensatory, and the Commission is required to consider the value and the quality of the service. The controlling portion of the Statute reads as follows:
"The commission shall, after notice and hearing, either upon request or upon its own motion, fix rates which are just, reasonable, compensatory, and not unjustly discriminatory. In all such proceedings, the commission shall consider the value and quality of the service and the cost of providing the service, which shall include but not be limited to, debt interest, the utility's requirements for working capital, maintenance, depreciation, tax and operating expenses incurred in the operation of all property used and useful in the public service, and a fair return on the utility's investment in property used and useful in the public service... ."[5]
Even under the changed law, the Legislature intended that the "value" of the service contemplates a consideration of the fair value of the system that is furnishing the service. Certainly, for example, the commission would not be justified in using a rate base of $10,000.00 if that were the book value of the stock of the corporation.

III
Failure to establish the rate base upon the "fair value" of the utility is a denial of Keystone's constitutional rights.
A public utility is entitled to a just compensation, or a fair return on the value of its property used or useful in the public service. Rates fixed by public authorities which are not sufficient to yield a fair or reasonable return to a public utility are unjust, unreasonable, and confiscatory, and their enforcement deprives the public utility company of its property, in violation of the Federal and State Constitution. In this respect, the Fifth and Fourteenth Amendments to the Federal Constitution safeguard private property against a taking for public use, and neither the nation nor the state may take such property of a public utility by means of the fixing of rates or charges which do not allow the utility a reasonable rate of return upon the value of that property.
Where a statue fixes the rates so low that the stockholders of a public utility company cannot get a reasonable return on their investment, this, too, is a taking of property without compensation. Accordingly, when a constitution or statute provides for the fixing by public authorities of rates or compensation for public utilities, it means reasonable rates and just compensation.[6]
As previously noted, the Florida Statute requires the rates be just, reasonable and compensatory, and the value of the service is to be considered.
In Bluefield Water Works and Improvement Company v. Public Service Commission *610 of the State of West Virginia,[7] the Supreme Court of the United States reversed the Supreme Court of Appeals of West Virginia, finding that a return of 6% upon the value of the property of the utility company was too low to constitute just compensation. In Denver v. Denver Union Water Co.,[8] the Supreme Court of the United States stated that they had no hesitation in holding that a return yielded by an Ordinance, which was 4.2812% of the value of the plant, was clearly inadequate and amounted to a taking of the utility's property without due process of law, contrary to the provisions of the 14th Amendment, as the prevailing rate of interest for secured loans on business and resident's properties in Denver was about 6% with higher rates for loans less adequately secured. In Los Angeles Gas & Electric Corporation v. Railroad Commission of the State of California,[9] the Supreme Court of the United States said:
This court has repeatedly held that the basis of calculation is the fair value of the property, that is, that what the complainant is entitled to demand, in order that it may have "just compensation," is "A fair return upon the reasonable value of the property at the time it is being used for the public." In determining that basis, the criteria at hand for ascertaining market value, or what is called exchange value, are not commonly available... . We have said that the judicial ascertainment of value for the purpose of deciding whether rates are confiscatory "is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts." ... The actual cost of the property  the investment the owners have made  is a relevant fact... . But while cost must be considered, the Court has held that it is not an exclusive or final test. The public have not underwritten the investment. The property, on any admissible standard of present value, may be worth more or less than it actually cost. The time and circumstances of the outlay, and the effect of altered conditions demand consideration... . This court has further declared that, in order to determine present value, the cost of reproducing the property is a relevant fact which should have appropriate consideration... . "If the highly important element of present costs is wholly disregarded, such a forecast becomes impossible".... This court has declared it to be self-evident "that there is an element of value in an assembled and established plant, doing business and earning money, over one not thus advanced," and that this element of value is "a property right" which should be considered "in determining the value of the property upon which the owner has a right to make a fair return." ...[10]
There is no finding by the Commission that the base of $50,000.00 is the reasonable value of a system furnishing service to 502 customers. That would not begin to pay for the meters, the tank, wells and distribution system. On the other hand, the independent appraisal and "fair value" of $195,134.94 is undisputed.
It is well accepted procedure that for tax purposes, depreciation is taken as rapidly as the Internal Revenue Service will permit. This often results in property being worth considerably more than its book value. Replacement value usually exceeds book value. It is also a well known fact that the cost of pipe, tanks and other water distribution equipment was much higher in 1969 than in the period between 1924 and 1969 so that replacement value of the utility in 1969 would far exceed the actual *611 cost less depreciation taken for tax purposes.
The foregoing cases support the proposition that in establishing rates, the value of the system must be considered, or constitutional requirements are not met. It was perhaps with that in mind that the Legislature provided that as to utilities coming under the jurisdiction of the Florida Public Service Commission after September 1, 1967, the Commission should make a finding on the fair value of the utility's property used and useful in the public service as of September 1, 1967.[11]
It was certainly the intent of the Legislature that the value of a system coming under the jurisdiction of the Commission after September 1, 1967, should be considered. The passage of Section 367.081, Florida Statutes, 1971, F.S.A., did not change that intent. The Statute has always required that the Commission consider the value of the service. To consider the value of the service requires consideration of what the system in question is worth to the consumers. It means that consideration should be given to the fact that the replacement value of the system is $195,134.94, because if that is what another system would cost under present conditions, that is the value of the service to the consumers. The rate base, then, should be $195,134.94.
The Commission made no showing or finding that any other similar city water system with 502 customers has a reasonable value of only $50,000.00. There are none.
Accordingly, the writ of certiorari is granted, Public Service Commission Orders 5515 and 5515-A are quashed, and the cause remanded for proceedings consistent herewith.
It is so ordered.
ROBERTS, A.C.J., and ERVIN, ADKINS and DEKLE, JJ., concur.
NOTES
[1] Section 367.12(2)(a), Florida Statutes, 1969, F.S.A.
[2] "This chapter shall supersede all other laws on the same subject; subsequent inconsistent laws shall supersede this chapter only to the extent that they do so by express reference. This law shall not impair or take away vested rights, other than procedural rights or benefits."
[3] 79 Fla. 1, 83 So. 627 (1920). See generally, 50 Am.Jur.Statutes § 478.
[4] 143 So.2d 854 (Fla. 1962), reh. denied.
[5] Section 367.081(2), Florida Statutes, 1971, F.S.A.
[6] See generally 64 Am.Jur.2d Public Utilities § 135.
[7] 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1922).
[8] 246 U.S. 178, 38 S.Ct. 278, 62 L.Ed. 649 (1917).
[9] 289 U.S. 287, 53 S.Ct. 637, 77 L.Ed. 1180 (1932).
[10] Id. at 305-313, 53 S.Ct. at 644-647. (Citations and footnotes omitted).
[11] See Section 367.12(2) (a), Florida Statutes, 1969, F.S.A.