SPECTOR, Associate Judge (Retired).
By this petition for writ of certiorari, the petitioner utility companies seek review and reversal of an order of the circuit court which upheld an order of the respondent regulatory board denying petitioners a rate increase.
The final judgment of the learned Circuit Judge sets forth with ample cogency the reasoning underlying his refusal to set aside the regulatory board’s order denying the requested increase.
In my view, there has been no demonstration by the petitioners herein that the court below departed from the essential requirements of law by the entry of the final order reviewed herein, and therefore the petition for writ of certiorari is denied for the very reasons and grounds set forth by the court below in its order which we hereby adopt as our own and recite the same, omitting formal parts, as part of this opinion, to wit:
“Jacksonville Suburban Utilities Corporation and Southern Utilities Company, Petitioners herein, applied on August 18, 1972 to the Respondent for increase in the rate charged their customers for water and sewer services. Both petitioners are wholly owned subsidiaries of General Waterworks Corporation and conduct their utility operations as a single integrated business and so a consolidated application for rate increase was filed by them. A public hearing and evidentiary hearings were held by the Board at intervals thereafter until a hearing on October 19, 1973 after which the Board entered its Order denying the application.
*810 “At the time the application was filed, the Utility Regulatory Board of the City of Jacksonville followed the original cost or net investment theory in determining rate increases. On July 1, 1973 a local Act for Jacksonville became effective requiring the Board, in setting rates, to be governed by the same rules and criteria as the Florida Public Service Commission under Chapter 367 of the Florida Statutes, more particularly, Section 367.081(2) F.S. This statute requires the Board to ‘fix rates which are just, reasonable, compensatory, and not unjustly discriminatory’ and to ‘consider the value and quality of the service and the cost of providing the service, which shall include, but not be limited to, debt interest, the utility’s requirements for working capital, maintenance, depreciation, tax and operating expenses incurred in the operation of all property used and useful in the public service, and a fair return on the utility’s investment in property used and useful in the public service.’
“Although Petitioners maintained through several hearings that they did not have records of the original cost of the system and the contributions in aid of construction made by customers and developers who were not investors, an independent search by the Board’s staff resulted in the finding of substantial records and books of account regarding the original costs of the services operated by Petitioners.[1] The contention of Petitioners, however, was that after July 1, 1973, the Board was required to apply the criteria of F.S. 367.081 and that an engineer’s original cost evaluation report was a sufficient showing of the value of the system to establish a rate base on which a fair return could be determined.
“Petitioners further contend that since they consider a fair rate of return would be 9.7 per cent and they were seeking only a 9 per cent return by their application, the Board had no discretion in the matter but was required to grant the increase as long as the rate requested was not exactly eqúal to the full fair return on the Utilities’ investment in property used and useful in the public service. In support of this contention, the petitioners cite the case of Utilities Operating Company, Inc. vs King [Fla.] (1962) 143 So.2d 154.
“This Court reads that case differently. Petitioners argument presupposed that sufficient credible testimony was received by the rate-making body to determine the fair value of the property of the utility used and useful in the public service. A review of the transcript of the testimony and by the application of the provisions of Section 367.081 F.S. to that testimony, this Court concurs in the findings of the Respondent in its Order that the Company’s application is substantially deficient in supporting basis and records establishing the value of the utility plant, and that the evidence offered is not sufficiently competent, reliable, material, relevant and substantial to support any order for an increase for its water and sewer rates.
“In certiorari, the reviewing court will not undertake to re-weigh or evaluate the evidence presented before the tribunal or agency whose order is under examination. The appellate court merely examines the record made below to determine whether the lower tribunal had before it competent, substantial evidence to support its findings and judgment which also must accord with the initial requirements of the law. DeGroot vs Sheffield [Fla.] (1957) 95 So.2d 912.
“In the case sub judice, the findings and order of the Respondent were based on the *811 absence of competent, substantial evidence to support the requested rate increase and this Court, on review, concurs in that determination.
“The Court is not unmindful of the case of Keystone Water Company, Inc. vs Bevis [Fla.] (1973) 278 So.2d 606, which holds that in fixing utility rates the rates must be just, reasonable and compensatory and that in arriving at the value of the system, consideration should be given to the fair value of the utility at the time the rate application is being considered. The Board found that the evidence was not sufficient, competent, reliable, material, relevant and substantial to determine a rate base from which a fair return could be computed.
“The judgment and order appealed from is accordingly affirmed.”
Accordingly, the petition for writ of cer-tiorari is denied.
RAWLS, C. J., and JOHNSON, J., concur.

. In marked contrast to the plant cost figures of over $3,200,000.00 derived from an engineering study which was submitted in support of petitioners’ application for rate increases because the books and records reflecting actual original cost had been “lost or missing”, the independent search referred to by the trial court revealed some 40 to 50 boxes of records located on the petitioner company premises which reflect an actual original cost of $1,670,419.60, which includes $513,251.07 as contributions in aid of construction, an item not even included in the cost estimate derived from the engineering study.