ENGLAND, Justice.
Petitioner’s request for a rate increase is before us for the second time on petition for a writ of certiorari to the Florida Public Service Commission.[1] The first opinion of this Court on petitioner’s request, reported at 278 So.2d 606, quashed an order of the Commission which had set petitioner’s rate base at $50,000. The Court there held that the proper rate base was $195,-134.94, based on the appraised, fair market value of petitioner’s assets at the time petitioner came under the Commission’s jurisdiction,[2] rather than the amount of capital stock reflected on petitioner’s balance sheet.[3]
On remand from this Court, the Commission awarded petitioner a 3.459% rate of return on the Court-ordered rate base of $195,134.94.[4] This overall rate of return was the mathematical result of allowing petitioner’s shareholders to receive a 13.5% return on their $50,000 investment. No return was authorized with respect to contributions in aid of^construction or appraisal write-up. In overall dollars, the Commission’s order would provide petitioner’s shareholders with an annual return of $6,750, as compared with $4,225 under the Commission’s original erroneous order.
Petitioner contends that by lowering the rate of return from 8.5% to 3.459% on the Court-ordered higher rate base, the Commission has merely shuffled numbers in order to achieve approximately the same dollar result as in its original order. Respondent contends that the lower overall rate of return was determined in accordance with well-established rate-making principles, that it is not confiscatory in law or in fact, and that the 13.5% return on investment is reasonable for comparable risk ventures.[5] We agree with respondent that a 3.459% overall rate of return is not per se confiscatory,[6] and that the 13.5% rate of return to “risk” capital appears to be computed properly. We disagree with the Commission, however, on its application of rate-making principles under the 1969 statute which governs this case. Specifically, the Commission erred in construing section 367.12(2)(b), Fla.Stat. 1969, as authority for applying a rate of return on *726 risk capital to only $50,000 of petitioner’s balance sheet net worth.
Petitioner’s shareholders committed $50,000 to this water system prior to the date it came under the Commission’s jurisdiction. Ordinarily they would be entitled to a return on that amount and no more. When petitioner came under the regulatory jurisdiction of the Commission, however, its assets had an appraised worth of $195,134.94. We previously held that sum to be the proper rate base for regulatory purposes under section 367.12(2) (a), Fla.Stat.1969.[7] Under that statute, petitioner was required to dedicate to the public all assets “used and useful” in the water business, at their then value. That statute not only requires a valuation of property as of the date jurisdiction vests in the Commission, it contemplates that additions to property exclusive of contributions in aid of construction will be added to rate base at cost. It can be implied' from this statutory scheme that contributions in aid of construction which were made prior to the advent of Commission jurisdiction were to be valued along with invested property as of that critical date. Since the statutory scheme treats the jurisdictional transfer as if the utility’s assets were sold at fair market value on the critical date,[8] it is immaterial thereafter whether they had come into the enterprise through shareholders’ investments, contributions in aid of construction, appraisal write-ups, accumulated earnings or otherwise. Petitioner’s shareholders are entitled by law to a return on the full value of those dedicated assets at that point, irrespective of their original cost or manner of acquisition. For that purpose, it becomes immaterial that petitioner’s balance sheet reflects those assets as common stock, contributions in aid of construction, and appraisal write-ups.[9] The law applicable to this case requires a “fair return” on “fair value”,[10] and having already held that the latter is determinable by reference to the appraised value of assets at the time petitioner came under regulation, it would contradict logic to allow a rate of return predicated solely on petitioner’s pre-regulation cost of capital.
The Commission should have applied an overall rate of return to a rate base which in this particular case is identical with the fair value of petitioner’s net worth, i. e., the capitalized value of petitioner’s properties on the date petitioner came under the Commission’s jurisdiction. The order of the Commission is quashed and the case is remanded to the Commission [11] to award petitioner a reasonable rate of return on $195,134.94.[12] The Commis *727 sion is further directed to take all steps necessary to expedite and conclude petitioner’s rate case.
ADKINS, C. J., ROBERTS and Mc-CAIN, JJ., and ORLANDO, Circuit Judge, concur.

. On May 6, 1971 petitioner applied to the Commission for an increase in water rates sufficient to yield a return of 7.25% on a rate base of $195,134.94. Petitioner’s request has remained in administrative or judicial litigation since that date. Our jurisdiction is based on Fla.Const, art. Y, § 3(b) (7), West’s F.S.A., and section 367.131, Fla.Stat.

. Keystone was incorporated in 1929, but did not come under the Commission’s jurisdiction until November 11, 1969. The Court held that Section 367.12(2), Fla.Stat.1969, governed petitioner’s rate request and required the Commission to use a “fair value” rate base.

. Petitioner issued capital stock upon incorporation in the amount of $25,000. This amount was decreased to $10,000 in 1941 and increased to $50,000 in 1959. It has remained the same ever since.

. The Commission’s original order had authorized an 8.5% rate of return on the $50,000 rate base.

. The Commission contends that a 7.25% overall rate of return on the new rate base, as requested by petitioner, would provide an excessive 28.29% return on shareholder’s investment.

. See Federal Power Comm. v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944) (3.27% overall rate of return found reasonable); Bluefield Water Works & Improve. Co. v. Pub. Serv. Comm’n of W. Va., 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1923) (6% overall rate of return found unreasonable).

. 278 So.2d 606.

. Comparable considerations were discussed in Pichotta v. Skagway, 78 F.Supp. 999, 12 Alaska 42 (D.C.Alaska 1948) ; Customers v. Northampton Elec. Lighting Co., 36 PUR (NS) 353, 356 (Mass. Dep’t Pub. Util.).

. In the usual case, of course, no return is provided to shareholders on contributions in aid of construction or appraisal write-ups, since they do not come from the investment of shareholders. A reappraisal write-up in net worth may not be an appropriate factor in rate of return computations for a regulated company which reappraises its assets while under Commission jurisdiction, but it is not excludable for rate-making purposes when the reappraisal precedes or is coincidental with the company’s subjection to regulation. Petitioner’s balance sheet could have been adjusted to convert these items to earned surplus at the time petitioner came under the Commission’s jurisdiction.

. Our decision in this case is necessarily limited to rate requests filed under the 1969 statute by those companies which came under the Commission’s jurisdiction some time after their operations had commenced. It has no application to requests for rate relief under the 1971 statute or any subsequent enactment.

. Authority for our remand is provided in section 120.68(9), Fla.Stat.1974.

. Inasmuch as equity and rate base are identical, respondent need not use the same risk capital return (13.5%) as it did when equity was a fraction of asset value. It may not, however, merely readjust its computations to achieve a result similar to its two prior at *727 tempts. Respondent’s obligation is to find a reasonable return on petitioner’s rate base, and to state its reasons therefor. See Section 120.59(1), Fla.Stat.1974.