HATCHETT, Justice.
Tamarac Utility Company applied with the Public Service Commission for a rate increase for the operation of its water and sewer treatment services. An interim rate increase was granted to the utility pending disposition on the merits of the rate increase application. Public Service Commission auditors encountered numerous problems with regards to the lack of primary data supporting the amount of contributions in aid of construction (CIAC). The Commission issued an order allowing the utility to provide clarification, in the form of a schedule, certified by a Certified Public *438 Accountant, setting forth by year and contributor, all contributions in aid of construction received by the company in any form and from any source.[1] Finally, the Commission issued an order dismissing the application and ordering a refund of monies collected under the interim rate increase previously approved. Tamarac Utility filed a Petition for Writ of Certiorari with this court.[2] After oral argument and consideration of the briefs, we conclude that there has been no departure from the essential requirements of law in. the Commission’s dismissal of the application for a rate increase.[3]
In its final- order,[4] the Public Service Commission noted that petitioner’s application and its supporting exhibits were seriously deficient with regards to proof of contributions in aid of construction which had been received by the utility company.[5] In addition, the Commission concluded that more CIAC existed than was shown in the company’s audit. Such CIAC receipts are essential to a proper determination of a utility’s rate base.[6] The Administrative Rules and Regulations of the Public Service Commission, Rule 25-10.176, require that each application by a water and sewer utility company for a rate adjustment must provide an accounting schedule showing total contributions in aid of construction.[7] Rule 25-10.177 requires that:
In each instance, the utility must be able to support any schedule submitted, as well as any adjustments or allocations relied on by the utility. The work sheets, etc., supporting the schedules and data *439 submitted must be organized in a systematic and rational manner so as to enable Commission personnel to verify the schedules in an expedient manner and minimum amount of time. The supporting work sheets, etc., shall list all reference sources necessary to enable Commission personnel to track to original source of entry into the financial and accounting system and, in addition, verify amounts to the appropriate schedules.
The utility in this case did not comply with these regulations and provide the original source records in a readily accessible manner in support of its amount of CIAC receipts. Further, the utility audit did not attempt to establish the CIAC amount through independent original source records. Instead, the utility chose to rely upon an audit which was based upon a CIAC schedule prepared by the utility company. The Commission recognized that any errors made by the utility company when it made its original entries in this schedule also would be present in the recent audit.
In Deltona Corp. v. Mayo, 342 So.2d 510 (Fla. 1977), we held that the Public Service Commission improperly denied a utility’s application for a rate increase, in spite of its finding that the utility’s accounts were both accurate and in conformity with prescribed regulatory accounting procedures. The Commission in that case denied the application based upon argument by the public counsel, but which was unsupported by any evidence, that additional CIAC amounts existed which had not been reported by the utility in its account books.[8] There, this court stated that the Public Service Commission cannot reject a CIAC amount proven by competent and substantial evidence offered by the utility, nor can the Commission assume there exists some additional indefinite amount of contributions in aid of construction which is not supported by competent substantial evidence. We hold, conversely, that any utility applying for a rate increase must support its CIAC valuation by competent substantial evidence in establishing its rate base.[9]
Accordingly, the order of the Public Service Commission in dismissing the utility’s application for a rate increase is affirmed.
It is so ordered.
BOYD, Acting C. J., and OVERTON, SUNDBERG and ALDERMAN, JJ., concur.

. On September 9, 1975, the Commission issued Order # 6891 which required that . . the utility shall . . . file a schedule, certified by a Certified Public Accountant, setting forth by year and contributor all contributions in-aid-of-construction received by the company, including but not limited to payments received under developer contracts, lines and/or plant facilities received by the utility as a donation from any source. The report will also include a statement as to the amount of lines and/or plant facilities transferred to the utility by the respective parent companies other than as a contribution which was written off by the respective parent companies as development costs for Federal income tax purposes.”

. We have jurisdiction pursuant to Article V, Section 3(b)(3), Fla.Const. (1968).

. Petitioner raises several issues here: (1) whether the Commission order, denying petitioner’s rate increase on the stated grounds that petitioner failed to provide complete and accurate information as to CIAC, is based upon competent and substantial evidence; (2) whether the Commission departed from the essential requirements of law by failing and refusing to make a rate determination as required by law, and which unconstitutionally deprives petitioner of its property without due process or just compensation; (3) whether the Commission was bound by the hearing examiner’s finding of fact pursuant to Sec. 120.57(1)(b)(9), Fla.Stat. (1977).

. The Commission’s final order dismissing the rate adjustment application, Order # 7788, dated April 27, 1977, noted numerous deficiencies in the utility audit: (1) the Commission concluded that the audit was merely a “verification” of a utility prepared schedule; (2) any independent audit would of necessity have to begin with original source documents to determine if the utility schedules included all of the connections, and whether each connection was charged the correct amount according to the tariff; (3) the utility audit was based upon a small sample of available developer agreements; (4) the utility audit made an assumption concerning the size of connection charges, which the Commission found to be not supported by the facts, since certain known increases in these charges were not reflected in the audit. These and other deficiencies aggravated the basic problem of the utility audit’s reliance upon CIAC amounts which were imputed figures, rather than amounts based upon original source data.

. CIAC amounts basically constitute a deduction from a utility’s rate base, so that the greater the CIAC the smaller the rate base. See, Westwood Lake, Inc. v. Dade County, 264 So.2d 7 (Fla. 1972).

. Public Service Commission Rule 25-10.-176(2)(a) 2.e.

. An additional portion of Rule 25-10.177 states: “Utilities may request a waiver of specific parts of the above rule from the Commission by submitting a written statement setting forth the reason, in detail, why the waiver should be granted.
Petitioner did not assert in this court that it was entitled to such a waiver of the Commission regulations because of the unavailability of primary data for 1968 and 1969.

. In Deltona, supra, this court also criticized the apparent use by the Commission of the utility’s fraudulent land sales practices as a matter relevant to its determination of the utility’s request for rate adjustment.
In this case, we do not believe that the Commission was penalizing the utility for failing to preserve its records in accordance with Rule 25-10.26(2). Rather, the dismissal of the application was predicated upon the utility’s failure to meet its burden of proof, because of its reliance upon an incomplete audit unsupported by competent, substantial evidence. The brief of intervenor, City of Tamarac, suggests that an accurate reconstruction of the CIAC account would require a review and audit of each house and lot sale, and each developer’s agreement. Such a reconstruction of the CIAC accounts might help explain the large disparity between the cost of the physical plant in comparison to the amount of invested capital.

. This conclusion is similar to the one reached by the First District Court of Appeal in Jacksonville Suburban Utilities Corp. v. Utility Regulatory Board, 305 So.2d 808 (Fla. 1st DCA 1975).