THOMPSON, Judge.
Appellant Rolling Oaks Utilities, Inc., formerly a division of the Rolling Oaks Corporation and now a subsidiary of the Beverly Hills Development Corporation, provides water and sewer service to the residents of Beverly Hills, a retirement-oriented community in Citrus County, Florida. In 1979, the appellant filed with the Florida Public Service Commission (PSC) an application for increases in the rates charged its customers. Because appellant had never before applied for a rate increase, the PSC was obliged to initially determine appellant’s rate base before acting on the request. Appellant now seeks review of the PSC’s order of September 17, 1981, charging as error the PSG’s determination of its rate base and the PSC’s refusal to allow appellant to switch from a quarterly billing cycle to a monthly billing cycle. We affirm in part and reverse in part.
Sometime prior to 1969, the Rolling Oaks Corporation determined to provide sanitary sewer service in Units 4, 5, and 6 of its subdivision, and began charging lot purchasers a $500.00 premium on lots sold in those units. In promotional literature, sales contracts, and closing statements, the $500 premium was variously referred to as “land improvement fee,” “sewer service,” or “unit 4 or 5 improvements.” In 1969 and 1970, these “land improvement fees” were shown on the corporate books to be a sewer charge, and the monies were kept in a separate utilities account. In 1971, the Internal Revenue Service began classifying the land improvement monies as income to the corporation, and the corporation thereafter changed its accounting treatment of the monies to reflect that they were revenues. However, from 1972 until 1974, the corporation continued to collect the separate, itemized fee of $500 on each lot sold in subdivision units 4, 5, and 6. No such premiums or fees were charged in connection with the sale of lots in units of the subdivision which were not served by sanitary sewers.
Based on the above-stated facts, and on the appellant’s failure to adduce evidence that the $500 fees were collected for some reason other than to finánce construction of the sewer system, a hearing officer from the Division of Administrative Hearings concluded that the premiums were contributions-in-aid-of-construction, (CIAC), and, as such, would be deducted from the stipulated value of appellant’s sewer system in order to determine appellant’s rate base. Because the record includes a wealth of competent, substantial evidence to support the hearing officer’s findings and conclusion that the premiums were CIAC, we approve the PSC’s determination that the $500 premiums collected upon the sale of lots in subdivision units 4, 5, and 6, whether or not denominated “sewer charge,” cannot be included in appellant’s rate base.
We are not unsympathetic with appellant’s plea that it is unfair and unjust to classify the premiums as CIAC since those monies were classified by the Internal Revenue Service as income to the corporation, and the three year statute of limitations on income tax refunds has long since run. However, we note the hearing officer’s finding that Rolling Oaks gained some tax *358 benefits from reporting the premiums as revenues, and we further note that appellant did not adduce evidence as to how much, if any, income tax it actually paid on the subject monies. Neither have we overlooked the case of Deltona Corp. v. Mayo, 342 So.2d 510 (Fla.1977). The Deltona case is clearly distinguishable, and actually supports the PSC action complained of here in that it affirmed the authority of the PSC to investigate and determine whether there had been any CIAC and the amount thereof, if any. The actual holding of the Delto-na court was that the PSC may not “impute” some indefinite, unknown amount of CIAC to a utility where the PSC’s own staff analysis indicated that there was no CIAC, and where the company’s books and accounts had been audited and determined to be correct and kept in accord with PSC accounting rules. Tamarac Utilities, Inc. v. Hawkins, 364 So.2d 437 (Fla.1978). Here, the PSC did not “impute” some speculative amount of CIAC, but rather investigated the financing of appellant’s sewer system and determined that a specific isolable sum ($500 for each of the 634 lots sold in units 4, 5, and 6 from 1969 to 1974) had been collected from the utility’s customers for the purpose of constructing the sewer system.
We do find, however, that the PSC abused its discretion in reversing the hearing officer’s determination that appellant should be permitted to bill its customers on a monthly, rather than quarterly, basis. The hearing officer found, and common knowledge confirms, that a quarterly billing cycle is unusual and is an exception to the prevailing practice in the utility industry. The appellant adduced evidence to show that a switch to monthly billing would enable the utility to more quickly detect and repair malfunctioning meters and leaks in its water lines, thereby minimizing lost revenues and assuring customers of more accurate billing. The hearing officer accepted this evidence, and further found that monthly billing would reduce the appellant’s working capital requirements. The only evidence tending to militate against a switch to monthly billing was the evidence that the more frequent billing would result in increased annual billing costs of some $22,600. Even though the appellant failed to prove the monetary value of the benefits which would accrue with the change to monthly billing, it unquestionably proved that there were benefits associated with monthly billing, both for it and for its customers. Because there was competent, substantial evidence to support the hearing officer’s finding that appellant should be permitted to bill on a monthly basis, we hold that the PSC’s reversal of the hearing officer’s determination on this issue was error. See, McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977); Holden v. Florida Department of Corrections, 400 So.2d 142 (Fla. 1st DCA 1981).
AFFIRMED in part and REVERSED in part.
LARRY G. SMITH, J., concurs.
JOANOS, J., concurs in part and dissents in part.